GRYBAUSKAS, APPELLEE, *v.* ASSOCIATED ESTATES CORPORATION, ET AL., APPELLANTS.

[Cite as Grybauskas v. Associated Estates Corp. (1976), 51 Ohio App. 2d 231.]

(No. 5-256—Decided September 13, 1976.)

*Mr. Melvin Andrews,* for appellee.
*Mr. William E. Armstrong* and *Mr. Harvey S. Morrison,* for appellants.

DAHLING, J. This cause is in this court on an appeal from the Court of Common Pleas of Lake County, wherein

after a trial by jury the plaintiff, the appellee here, was awarded a judgment of $47.95 in compensatory damages and $20,000 in punitive damages.

The action arose as a result of the leasing an apartment by defendants, the appellants, to plaintiff knowing that an occupancy permit had not been obtained. Defendants then asked plaintiff to move from the apartment to a hotel while they represented to the Willowick Planning Commission that the apartment had not been occupied. Defendants promised to pay plaintiff's room, meals, and telephone while at the Sheraton-Cleveland Hotel, but when it came time to pay, they refused to pay the bill for anything except the room, which amounted to $455.49. After plaintiff had vacated the premises, she received a letter from the collection manager of Associated Estates advising her that she had violated her lease by using her security deposit as rent and demanding $455.95. Correspondence followed regarding the agreement to reimburse plaintiff for her hotel expenses. Subsequently, collection letters were sent to plaintiff and final legal proceedings were initiated by defendants. Appellants knew they had no valid claim for this money and, from the evidence, it can be inferred defendants were simply annoying and harassing plaintiff with the hope that she would finally pay them the money to terminate the harassment and threats. Finally, plaintiff was investigated by the Lake County Bar Association as a result of the collection letters.

Defendants have presented the following assignments of error:

"1. The trial court erred in overruling the defendants' motion for a directed verdict on the issue of punitive damages made at the close of the plaintiff's evidence and renewed at the completion of all the evidence.

"2. The court erred in submitting the issue of punitive damages to the jury.

"3. The court erred in overruling the defendants' motion for judgment notwithstanding the verdict as to the verdict for punitive damages.

"4. The judgment for punitive damages is contrary to law.

"5. The judgment for punitive damages is not sustained by the evidence.

"6. The trial court erred in overruling the defendants' alternative motion for new trial for the reasons stated in the above assignment of errors and for the following additional reasons:

"a. In erroneously charging the jury on the issue of punitive damages and, upon objection by defendants, in failing to correct its charge on that issue.

"b. In admitting evidence offered by the plaintiff over the objection of defendants.

"c. Error of law occurring at the trial and brought to the attention of the trial court by the defendants.

"d. The punitive damages verdict was excessive and given under the influence of passion and prejudice.

"e. The judgment for punitive damages is not sustained by the weight of the evidence."

All of the assignments of error are without merit. Defendants have argued the assignments of error together and we will likewise consider them together.

Defendants contend that the corporation should not be responsible for the acts of their employees. However, Hy Holz, a department head, stated that the employee, Dave Fraigun, was "the responsible man" under Holz's direct supervision and control who signed the collection letter for $455.49. Further, he admitted, as did defendants' counsel, that they had no basis for claiming this money.

The situation on June 12, 1972, was that defendants permitted plaintiff and other tenants to occupy rental suites to which they had no occupancy permit. Defendants were attempting to quietly move the tenants so that the floors could be inspected and approved for occupancy. They expected this would take only one or two days. For this reason, defendants instructed Mr. Berman to make whatever arrangement with the tenants that was required but have the suites vacated immediately. Defendants apparently realized that if the tenants refused to move it might take months to evict them by legal proceedings.

Mr. Berman promised plaintiff to pay for her room, restaurant charges, telephone, parking, and incidentals.

However, the defendant refused to pay any of these charges. They finally paid the room charges but only after the Sheraton-Cleveland Hotel had called them numerous times and had initiated collection proceedings. The restaurant charges and telephone calls were not paid until the second day of the trial, which was about three years after they had been incurred.

Defendants complain that the proceedings of the Willowick Planning Commission were admitted into evidence. However, counsel stated to the jury:

"I have no objection to your reading through all of the proceedings of the Planning Commission. It's up to you. But, I do say that Associated Estates admits that they did not have a permit, that they got a list of gigs from the Fire Department on all kinds of incidental things, it's all in there."

Also, defendants complain of the charge on punitive damages, but counsel stated:

"The judge will charge you on punitive damages. This does not mean that they should or ought to be awarded. It's merely a charge saying that if you find certain things, you can award them; but, this is not a case where a company should be punished for having employees that perhaps acted negligently, or perhaps don't bother to find things out, or perhaps make some mistakes. We all make mistakes, and we have criminal laws that send people to jail for serious mistakes.

"But, as to mere negligence, inadvertence, failure to find out, it's not a situation where punishment in a monetary amount, is necessary or ought to be given. We've admitted our mistakes, we were willing to admit them originally by paying to accommodate the tenants, and that was an expensive mistake right there and then. We're willing to accommodate Miss Grybauskas for perhaps a small amount, the $28.95 and the parking expense, but we can do no more—and perhaps apologize to her and say we're sorry. And, that perhaps is not enough for her. But, nevertheless, that decision is in your hands and we feel that the jury system works, when you people make

decisions and conscientiously attempt to apply the evidence to the law. Thank you."

Defendants contend that the conduct of the employees were all honest mistakes. However, the record clearly discloses otherwise. Consider the following which appears on page 5 of the planning commission's minutes for June 12, 1972, when Mr. Golder and Mr. Jacksa were attempting to secure an occupancy permit for the 10th, 11th and 12th floors:

"Mr. Kaluba said that he felt Mr. Golder was doing a sincere job with the operation but when there are five tenants listed on three floors, three of whom are in occupancy, that this was bordering on a grave situation of zoning. He also said that he was sure Mr. Golder was not aware of this.

"Mr. Golder said that he was not.

"Mr. Jaksa said that there was no one living on the 10th, 11th or 12th floors. He said that when an apartment is leased, he is asked many times if a delivery of funiture could be brought in. He said that he did not know this was in violation and that if it was, he would not allow anyone to move anything into a suite until a temporary occupancy permit had been issued.

"Mr. Kaluba said that the law department takes the approach that occupancy exists as long as the furnishings are in and people are cooking there. He said that he has been there early in the morning and late at night and has observed people there. He also told Mr. Golder that if he was in a bind that he should come to the planning commission and let the commission know. He said that he was of the conviction that Mr. Golder was in violation and that he was in the position somewhat of contempt. He said it was one thing to put furnishings in a suite and decorate it, but the extent it is being done constitutes occupancy and should be discontinued. He said that these people could be removed."

From the testimony, it is apparent appellants were attempting to deceive the Willowick Planning Commission and this was not an "honest mistake."

Defendants have argued extensively that the Amended Complaint is based on contract but that the claim for punitive damages is based on tort.

Civil Rule 9(B) states:

"Fraud, mistake, condition of the mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

And Civil Rule 15(B) provides:

"Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. * * *"

In our opinion, the above rules, along with Civil Rule 8(F), which provides that pleadings shall be so construed as to do substantial justice, eliminated the necessity of reviewing the pleadings to determine the nature of the action, since there was in the instant case ample evidence of unlawful, willful, wanton, and malicious acts on the part of the defendants to support the judgment for punitive damages.

Defendants complain that the verdict was excessive. However, considering the extent of the mischief of the conduct and that the defendant corporation is the owner-manager of 7,000 apartment units, we do not agree that the verdict was excessive. At an annual rental income of $3,000 per unit, the defendants would gross $21,000,-000 per year. Certainly a $20,000 punitive damage award is a minor item to a corporation of this magnitude.

*Judgment affirmed.*

HOFSTETTER, P. J., and COOK, J., concur.