GOLDFARB, Appellee and Cross–Appellant,

v.

THE ROBB REPORT, INC., Appellant and Cross–Appellee.

[Cite as *Goldfarb v. The Robb Report, Inc.* (1995), 101 Ohio App.3d 134.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 94APE04–560, 94APE05–678.

Decided Feb. 7, 1995.

*Lindhorst & Dreidame* and *James M. Moore,* for appellee and cross-appellant.

*Carlile, Patchen & Murphy* and *John E. Haller*, for appellant and cross-appellee.

---

PEGGY BRYANT, Judge.

Defendant-appellant, The Robb Report, Inc., appeals from a judgment of the Franklin County Court of Common Pleas entered in favor of plaintiff-appellee, Lawrence J. Goldfarb, in accordance with the jury's verdict. Plaintiff cross-appeals.

The relationship between the parties has a tortured history which began with plaintiff's purchase of a sales franchise from defendant in 1982. The franchise agreement granted plaintiff the exclusive right to operate a business within the state of Ohio under the trade name "The Robb Report," and the right to sell advertising space in defendant's magazine, The Robb Report, on a commission basis.

Relations between plaintiff and defendant appear to have been strained from the beginning. On August 15, 1985, following a lengthy dispute over plaintiff's payment of franchise renewal fees and several other matters, defendant sent plaintiff a letter terminating his franchise. Plaintiff responded by bringing a lawsuit against defendant for declaratory and injunctive relief, and for compensatory and punitive damages, alleging that defendant breached the franchise agreement, diminished the value of plaintiff's franchise and tortiously interfered with plaintiff's business relationships. Defendant filed a counterclaim alleging that plaintiff had breached the franchise agreement. On August 29, 1985, the trial court issued a preliminary injunction requiring defendant to regard plaintiff as a franchisee in good standing pending the outcome of the case.

In September 1986, the case was tried before a referee. Apparently as a result of the referee's mistaken belief that the case had been settled, the referee did not issue a report until May 1, 1990. On March 7, 1991, the trial court issued a decision adopting the referee's report, vacating the preliminary injunction and holding that plaintiff had proven only his claim for breach of contract; that defendant owed plaintiff $5,790.25 in unpaid sales commissions; that plaintiff owed defendant $21,000 in unpaid franchise renewal fees; and that plaintiff was no longer a franchisee of The Robb Report. Both parties appealed.

In *Goldfarb v. The Robb Report, Inc.* (1991), 77 Ohio App.3d 362, 602 N.E.2d 329, we reversed the trial court's decision in its entirety and remanded the case for a new trial. Following remand, the case was consolidated with a second action which plaintiff commenced against defendant to recover damages accruing after the September 1986 trial. Prior to trial, plaintiff amended his prayer for

relief to demand $178,855.06 in compensatory damages and $1,000,000 in punitive damages.

On December 16, 17, 21, and 22, 1992, plaintiff's claim for breach of contract and prayer for punitive damages, as well as defendant's counterclaim for breach of contract, were tried to a jury; the issues of plaintiff's status as a franchisee and the amount of plaintiff's punitive damage award, if any, were left for the court's determination on the basis of the jury's verdict. At the close of all the evidence, the trial court overruled defendant's motion for a directed verdict on the issue of punitive damages, subsequently instructing the jury on the parties' respective claims for breach of contract and plaintiff's prayer for punitive damages pursuant to agreed-upon jury instructions.

The jury returned a verdict on December 23, 1992, in favor of plaintiff on his claim for breach of the franchise agreement and against defendant on its claim for breach of the franchise agreement. The jury further found defendant liable for punitive damages, and awarded plaintiff $472,843.32 in compensatory damages. On March 5, 1993, the trial court entered judgment on the verdict, reducing plaintiff's compensatory damages award to $178,855.06, the amount plaintiff sought in his amended prayer for relief. In addition, the court set a date for a hearing on the amount of plaintiff's punitive damage award, the amount of attorney fees, if any, to be awarded to plaintiff, and plaintiff's potential reinstatement as a franchisee of The Robb Report.

Subsequently, defendant moved for judgment notwithstanding the verdict, a new trial, or remittitur. On February 3, 1994, the trial court issued a decision overruling defendant's motions and further holding that plaintiff was not entitled to an award of attorney fees or to reinstatement as a franchisee. On March 2, 1994, the trial court issued a second decision in which it declined to award plaintiff punitive damages on the grounds that the issue of punitive damages was never before the jury, but arose from the "voluntary suggestion of the jury."

Defendant appeals, assigning the following errors:

"I. The trial court erred in denying Robb's motion for directed verdict on the issue of Goldfarb's punitive damages, in submitting Goldfarb's claim for punitive damages to the jury and in denying Robb's motion for judgment notwithstanding the verdict or for new trial on the issue of punitive damages.

"II. The jury's verdict awarding Goldfarb punitive damages was against the manifest weight of the evidence.

"III. The trial court erred in denying Robb's motion for new trial where the jury's verdict was the result of passion or prejudice.

"IV. The jury's verdict awarding Goldfarb compensatory damages of $472,-843.32, subsequently reduced to $178,855.06, was against the manifest weight of the evidence.

"V. The trial court erred in overruling Robb's motion for judgment notwithstanding the verdict or for new trial because the amount of damages which Goldfarb was awarded were excessive and appeared to have been given under the influence of passion or prejudice, there was an error in the amount of recovery, and the judgment was not sustained by the weight of the evidence.

"VI. The jury's verdict against Robb on its counterclaim was against the manifest weight of the evidence.

"VII. The trial court erred in overruling Robb's motion for judgment notwithstanding the verdict or for new trial on whether Robb was entitled to recover damages on its counterclaim because there was an error in the amount of recovery, and the judgment was not sustained by the weight of the evidence.

"VIII. The trial court erred in failing to order a remittur [*sic*]."

Plaintiff cross-appeals, assigning the following errors:

"I. The trial court erred to the prejudice of appellee/cross-appellant Goldfarb in overruling Goldfarb's motion for reinstatement as a franchisee in good standing of The Robb Report, Inc.

"II. The trial court erred in overruling appellee/cross-appellant Goldfarb's motion for an award of punitive damages.

"III. The trial court erred in overruling appellee/cross-appellant Goldfarb's motion for an award of attorneys' fees and expenses."

Defendant's first, second and third assignments of error and plaintiff's second assignment of error on cross-appeal will be addressed together, as they raise related questions concerning the issue of punitive damages.

In its first three assignments of error, defendant alleges that the trial court erred as a matter of law in giving an instruction on punitive damages, as punitive damages are not recoverable in an action for breach of contract. Alternately, defendant asserts that the trial court erred in so instructing the jury, because the record contains insufficient evidence to support an award of punitive damages, and thus the issue should not have been submitted to the jury. Finally, although no punitive damages were awarded, defendant urges that it was prejudiced by the instruction on punitive damages because the erroneous instruction inflamed the jury against defendant; thus defendant asserts it is entitled to a new trial. Plaintiff counters in his second assignment of error on cross-appeal that the jury instruction on punitive damages was proper; that the jury's verdict determining

that plaintiff was entitled to punitive damages was supported by the evidence; and that the trial court erred in refusing to award plaintiff punitive damages.

Pursuant to the jury instruction agreed to by the parties, the trial court instructed the jury on punitive damages, in relevant part, as follows:

"If you find for the plaintiff, you will also have to decide whether the Robb Report should be liable for punitive damages in addition to any other damages that you may award Larry Goldfarb.

" * * *

"You may decide the Robb Report is liable for punitive damages if you find by clear and convincing evidence that the Robb Report has as—that the Robb Report as an employer authorized, participated in, or ratified acts or failure to act of an employee that demonstrate malice, aggravated or egregious fraud or oppression and Lawrence Goldfarb presented proof of actual damages that resulted from those acts or failures to act as an employee of the Robb Report."

Given that the trial court did not instruct the jury on plaintiff's claim for tortious interference, defendant initially argues that plaintiff was left with only a claim for breach of contract; that punitive damages are not available for breach of contract; and that the trial court thus erred as a matter of law in instructing the jury on punitive damages. Defendant's contentions on appeal apparently were not preserved at the trial level, as defendant seems to have agreed to the jury instruction on punitive damages, arguing at trial only that the evidence did not warrant the instruction. Nonetheless, because the arguments of the parties on appeal are so conflicting regarding the availability of punitive damages in an action for breach of contract, we address defendant's contentions.

Defendant is correct that as a general rule punitive damages are not recoverable in an action for breach of contract. *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 45–46, 540 N.E.2d 1358, 1366–1367. However, an exception exists where the breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression. *Saberton v. Greenwald* (1946), 146 Ohio St. 414, 426, 32 O.O. 454, 458–459, 66 N.E.2d 224, 229–230; *Carrera v. Sandman* (1989), 65 Ohio App.3d 422, 426, 584 N.E.2d 753, 755; *R & H Trucking Inc. v. Occidental Fire & Cas. Co.* (1981), 2 Ohio App.3d 269, 272, 2 OBR 298, 301, 441 N.E.2d 816, 819; Annotation, Punitive Damages for Breach of Contract (1933), 84 A.L.R. 1345. While the cases do not specifically address the issue, they suggest that in such a case the independent tort need not be pleaded or the jury be instructed as to the tort. See *Garrett v. Am. Family Mut. Ins. Co.* (Mo.App.1974), 520 S.W.2d 102; *Arthur Young & Co. v. Kelly* (1993), 88 Ohio App.3d 343, 352, 623 N.E.2d 1303, 1308–1309; *R & H Trucking, supra; Grybauskas v. Associated Estates Corp.* (1976), 51 Ohio App.2d 231, 236, 5

O.O.3d 363, 366, 367 N.E.2d 881, 884. However, in order for the issue of punitive damages to properly be submitted to the jury, the party seeking punitive damages must present not only evidence of a breach of contract, but also evidence of conduct constituting a connected, but independent tort, together with evidence of fraud, malice or oppression. See *Garrett; Arthur Young; R & H Trucking; Grybauskas, supra.*

As a result, whether the trial court erred in instructing the jury on punitive damages in the present case turns on whether the record contains evidence that defendant (1) breached its contract with plaintiff; (2) committed a connected tort independently of the breach of contract; and, in so doing, (3) acted fraudulently, maliciously or oppressively toward plaintiff.

As to the first prong, defendant has not challenged on evidentiary grounds the jury's verdict that defendant breached the franchise agreement with plaintiff and, in fact, the record contains evidence of such a breach.

The record also reveals evidence of malice under the second prong set forth above. "Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic*.) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, at syllabus. Specifically, plaintiff testified that during a telephone conversation with The Robb Report in 1984, he overheard Samuel Phillips, then chairman of The Robb Report, say, "I want to screw Larry Goldfarb." While not overwhelming, plaintiff's testimony, if believed, provides some evidence that The Robb Report's conduct toward plaintiff was characterized by "hatred or ill will."

Thus, whether the trial court erred in instructing the jury on punitive damages resolves to whether the record contains evidence that defendant committed an independent tort. Plaintiff argues that the record is replete with evidence of defendant's tortiously interfering with his business relationships.

"The basic principle of a 'tortious interference' action is that one, who is without privilege, induces or purposely causes a third party to discontinue a business relationship with another is liable to the other for the harm caused thereby. * * * " *Wolf v. McCullough–Hyde Mem. Hosp.* (1990), 67 Ohio App.3d 349, 355, 586 N.E.2d 1204, 1208. The essential elements of a claim for tortious inference with a business relationship thus are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Id.*

Although the record reveals that defendant's in-house sales staff frequently called upon businesses located in plaintiff's territory, such sales calls, standing alone, are insufficient to establish tortious interference.[1] Plaintiff must also present evidence indicating that he had an ongoing business relationship with one of the businesses contacted by defendant's in-house sales staff at the time of the contact. A careful review of the record reveals that, with the exception of Cressmont Cadillac, Rolls Royce, Jack Schmidt Oldsmobile, Custom Coach and Cincinnati Microwave, the record contains no evidence of any contact between the businesses called upon by defendant's in-house sales staff and plaintiff, much less any evidence of ongoing business relationships between plaintiff and the businesses contacted.

As to those five entities, plaintiff presented evidence that plaintiff had a business relationship with Cressmont Cadillac, Rolls Royce and Jack Schmidt Oldsmobile. In addition, the record also contains uncontroverted evidence that defendant's in-house sales staff had established relationships with both businesses prior to plaintiff's first contact with either business. As a result, defendant's in-house sales staff's dealings with Cressmont Cadillac, Rolls Royce and Jack Schmidt Oldsmobile were "privileged" and therefore not tortious as to plaintiff. See *Juhasz v. Quik Shops, Inc.* (1977), 55 Ohio App.2d 51, 57, 9 O.O.3d 216, 219, 379 N.E.2d 235, 238–239; see, also, Restatement of the Law 2d, Torts (1979) 52, Section 773.

With respect to Custom Coach and Cincinnati Microwave, both businesses were longtime clients of plaintiff prior to defendant's contacting their respective in-house sales staffs. However, no evidence in the record suggests that defendant did anything to interfere with plaintiff's business relationship with either Custom Coach or Cincinnati Microwave until after plaintiff had been terminated as a franchisee following the trial court's decision in the first trial in this matter. Once plaintiff was terminated as a franchisee, he no longer had any right to contact those clients as a representative of The Robb Report, and defendant's in-house sales staff was free to fill the void left by his termination.

---

1. Such calls are also insufficient to establish a breach of contract in the present case. Contrary to plaintiff's repeated intimations at trial, the franchise agreement did not grant plaintiff the exclusive right to sell advertising within his territory. Rather, the franchise agreement granted plaintiff " * * * the sole and exclusive right of franchise and license to *establish, maintain, and operate a business * * * under the trade name, THE ROBB REPORT,* within * * * [his] territory." (Emphasis added.) Sales to businesses located within plaintiff's territory by defendant's in-house sales staff and other franchisees are expressly contemplated under the agreement. Specifically, Section 4(A)(iv) of the agreement provides: "On sales of advertising space in *THE ROBB REPORT* made to customers located within the Franchisee's territory, but not sold by Franchisee, then, in that event, Franchisee shall receive 20% commission payable in the manner set forth above * * *."

Given the lack of evidence in the record that defendant committed an independent tort, the trial court erred in charging the jury on punitive damages. *Steadley v. Montanya* (1981), 67 Ohio St.2d 297, 300, 21 O.O.3d 187, 188, 423 N.E.2d 851, 854–855; *Cessna v. Best Furnace Co.* (Nov. 16, 1994), Trumbull App. No. 93-T-4905, unreported, 1994 WL 638190.

■ Even though the trial court refused to enter an award of punitive damages against defendant, defendant argues that it was prejudiced by the court's error in instructing the jury on punitive damages; that the improper jury instruction on punitive damages tainted the jury's verdicts.

■ Initially, we note that the parties agreed that the issue of punitive damages, if properly at issue, would be submitted to the jury solely to determine whether an award should be made; the amount of the award was to be determined subsequently by the court. Ordinarily, prejudice resulting from an improper jury instruction on punitive damages is corrected by vacating the punitive damage award and allowing the balance of the decision to stand. See *Cessna, supra; Hauter v. McIllwaine* (June 11, 1982), Lucas App. No. L-81-364, unreported, 1982 WL 6444. Here, the trial court's refusal to award any amount in punitive damages in effect did so.

Defendant contends, however, that the fact that jury awarded compensatory damages which exceeded plaintiff's prayer for damages by almost $300,000 strongly indicates that the erroneous punitive damage instruction influenced the jury, and that we should assume that the jury was similarly influenced by the erroneous instruction in reaching its verdict on defendant's counterclaim.

Defendant's argument is speculative at best. The excessive compensatory damage award returned by the jury may have resulted from any number of factors, including the demeanor of defendant's witnesses or the evidence of defendant's malice. Defendant, in effect, asks this court to speculate as to what factors did and did not influence the jury's decision-making process. Such second guessing regarding matters clearly within the province of the jury is improper. See *Wilburn v. Cleveland Elec. Illum. Co.* (1991), 74 Ohio App.3d 401, 412, 599 N.E.2d 301, 307–308. As a result, this record does not support defendant's contentions of reversible error in an instruction on punitive damages which results in no award.

Defendant's third assignment of error also asserts, however, that the trial court erred in refusing to grant defendant a new trial, as the jury's verdict reflects passion or prejudice arising from the trial court's improper instruction on punitive damages. In overruling defendant's motion, the trial court noted that it had not instructed the jury on punitive damages.

Clearly, to the extent the trial court denied defendant's motion for a new trial on the premise that no punitive damages instruction was given, defendant has been deprived of a fair review of its motion. While on appeal we cannot trace specifically any passion or prejudice to the jury instruction, the trial judge may be in a different position to review the issue raised by defendant's motion, given his presence during the trial. While we do not suggest by our holding on this issue that the improper instruction caused such passion or prejudice as to mandate a new trial, we nonetheless are persuaded that defendant is entitled to have his motion considered under an accurate premise, including the fact that the trial court instructed on punitive damages. To that limited extent, defendant's third assignment of error is sustained.

Defendant's first and second assignments of error and plaintiff's second assignment of error on cross-appeal are overruled; to the limited extent indicated, defendant's third assignment of error is sustained.

■ In its fourth assignment of error, defendant alleges that the compensatory damage award of $178,855.06 is against the manifest weight of the evidence.

■ When presented with a manifest weight argument, an appellate court will not overturn a jury verdict if the verdict is supported by "some competent, credible evidence going to all essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Further, when addressing a manifest weight of the evidence argument, questions of weight and credibility are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

The record in this case fails to reveal competent, credible evidence sufficient to support the jury's award of compensatory damages. Rather, the evidence supports an award of $71,463.32. Specifically, plaintiff testified that defendant owed him $116,463.32 in unpaid sales commissions for the years 1984 through 1991. However, plaintiff acknowledged that defendant was entitled to a setoff of $45,000 for plaintiff's annual $7,500 franchise renewal fee for the six years from 1985 through 1991.

Although plaintiff allegedly suffered some loss of future earnings as a result of defendant's breach of the franchise agreement, the record contains no evidence from which the jury could calculate such a loss. While plaintiff testified that at the time of his termination as a Robb Report franchisee in 1991, he anticipated remaining a franchisee for at least ten more years, such evidence is insufficient; without some evidence of plaintiff's yearly income during the period in which he was a franchisee, the jury had no basis to determine plaintiff's loss of future earnings for that ten-year period. Nonetheless, the evidence supports a judg-

ment for plaintiff in the amount of $71,463.32. Given that evidence, we reduce the trial court's judgment for plaintiff to $71,463.32.

For the foregoing reasons, defendant's fourth and eighth assignments of error are sustained to the extent indicated. Our resolution of defendant's fourth and eighth assignments of error renders moot defendant's fifth assignment of error; thus we decline to address it. App.R. 12(A)(1)(c).

Defendant's sixth and seventh assignments of error allege that the jury's verdict for plaintiff on defendant's counterclaim for breach of the franchise agreement was against the weight of the evidence.

 · To the extent that defendant's sixth and seventh assignments of error challenge the legal standard utilized by the jury in determining that plaintiff did not breach the franchise agreement, defendant waived any error. The legal standard to be utilized by the jury in determining whether a breach exists is contained in the jury instructions. Defendant not only failed to object to the jury instructions in this regard, but explicitly agreed to the instructions. Defendant cannot complain now that the legal standard for breach contained in the instructions was erroneous. Civ.R. 51(A); *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 24 O.O.3d 316, 436 N.E.2d 1001.

 Rather, defendant principally argues under its sixth and seventh assignments of error that the jury's failure to find that plaintiff breached the franchise agreement and to award defendant damages on its counterclaim is against the manifest weight of the evidence, given plaintiff's concession that he owed defendant $45,000 in unpaid franchise renewal fees.

While plaintiff acknowledged not having paid his annual $7,500 franchise renewal fee for the years 1986 through 1991, his admission is not tantamount to an admission of breach of the franchise agreement. Paragraph 4 of the addendum to the franchise agreement provides:

"All display and special listing revenue emanating from the home office in Franchisee's area shall be credited to Franchisee, except national agency advertising."

Plaintiff testified that paragraph 4 of the addendum was added to the agreement because he wanted sales commissions owed to him as the result of sales made within his territory by defendant's in-house sales staff credited against his annual franchise renewal fee. Plaintiff further testified that for each of the years from 1986 through 1991, his commissions on in-house sales made within his territory exceeded his $7,500 franchise renewal fee. Thus, on that evidence, the jury could have found that plaintiff's failure to pay defendant a $7,500 franchise renewal fee for the years 1986 through 1991 did not constitute a breach of the

franchise agreement, as the sales commissions owed plaintiff for those years covered plaintiff's renewal fees.

Because the jury's verdict finding that plaintiff did not breach the franchise agreement is supported by competent, credible evidence, plaintiff's acknowledgment of a $45,000 debt to defendant merely entitles defendant to a setoff in that amount, as noted above, against the award of compensatory damages made to plaintiff on his claim for breach of the franchise agreement. Defendant's sixth and seventh assignments of error are overruled.

■ In his first assignment of error on cross-appeal, plaintiff alleges that the trial court erred in refusing to reinstate him as a franchisee of The Robb Report in good standing.

In seeking to be reinstated as a franchisee of The Robb Report, plaintiff seeks to have the franchise agreement specifically enforced. "Specific performance is only available where there is no adequate remedy at law." *Gleason v. Gleason* (1991), 64 Ohio App.3d 667, 672, 582 N.E.2d 657, 661. Initially, plaintiff has presented no evidence to suggest that damages would be inadequate to compensate him for his loss of future earnings, nor has he argued that his future income stream as a franchisee of The Robb Report is so speculative as to prevent the accurate calculation of damages. Thus, damages on this record are an adequate remedy for plaintiff.

■ Further, the parties' contract in itself is not amenable to specific performance, as specific performance is not available in a contract for services. *Masetta v. Natl. Bronze & Aluminum Foundry Co.* (1953), 159 Ohio St. 306, 311, 50 O.O. 301, 303, 112 N.E.2d 15, 18–19. The rationale underlying the rule is twofold. First, mutuality in the equitable remedy does not exist, because the party who is to furnish the services under a contract may not be compelled to perform. *Masetta, supra.* Second, where the contract is for services over an extended period of time, the court lacks the authority to supervise the ongoing performance of the contract. *Port Clinton RR. Co. v. Cleveland & Toledo RR. Co.* (1862), 13 Ohio St. 544.

The present case presents both problems. Mutuality of remedy does not exist, as specific performance is not available to defendant to compel plaintiff to continue as a franchisee. Additionally, because the franchise agreement is essentially renewable at plaintiff's option forever, continuing supervision by the court would be necessary to assure compliance with a decree of specific performance.

In light of the foregoing, the trial court properly refused to reinstate plaintiff as a franchisee. Plaintiff's first assignment of error on cross-appeal is overruled.

In his third assignment of error on cross-appeal, plaintiff alleges that the trial court erred in overruling his motion for attorney fees and expenses. Plaintiff argues that paragraph 22 of the franchise agreement entitles him to an award of reasonable attorney fees and related expenses.

Paragraph 22 provides as follows:

"*Cost of Enforcement.*

"If either the Franchisor or the Franchisee institutes any action at law or equity against each other to secure or protect any of their interest hereunder or to enforce any of the terms and conditions or the covenants of this Franchise Agreement, the prevailing party shall be entitled, without limitation, to recover such reasonable attorney's fees, court costs and other suit monies as this court may deem reasonable and necessary at both the trial and appellate levels."

The Ohio Supreme Court has considered the enforceability of contractual provisions providing for the reimbursement of attorney fees, and has found them to be enforceable absent a showing of grossly unequal bargaining positions between the parties, misunderstanding, deception or duress. *See Nottingdale Homeowners' Assn., Inc. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702; *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 513 N.E.2d 253; *Hilb, Rogal & Hamilton Agency of Dayton, Inc. v. Reynolds* (1992), 81 Ohio App.3d 330, 610 N.E.2d 1102. In so holding, the court has stated:

"It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom 'is as fundamental to our society as the right to write and to speak without restraint.' *Blount v. Smith* (1967), 12 Ohio St.2d 41, 47, 41 O.O.2d 250, 253, 231 N.E.2d 301, 305. Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts. * * *

" * * *

" * * * A rule of law which prevents parties from agreeing to pay the other's attorney fees, absent a statute or prior declaration of this court to the contrary, is outmoded, unjustified and paternalistic." (Footnote omitted.) *Nottingdale, supra,* at 36–37, 514 N.E.2d at 705–707.

In the instant case both parties are reasonably sophisticated business entities. Defendant has made no showing of duress or overreaching in the drafting of paragraph 22. In fact, defendant is the drafter of the franchise agreement. Thus, the trial court erred in refusing to enforce paragraph 22 of the franchise agreement.

Plaintiff's third assignment of error on cross-appeal is sustained; on remand, the trial court is to hold a hearing to determine the amount of reasonable and necessary attorney fees, court costs, and other expenses incurred by plaintiff in pursuing this action both at the trial level and on appeal.

Having overruled defendant's first, second, sixth and seventh assignments of error and plaintiff's first and second assignments of error on cross-appeal, having sustained defendant's third, fourth, and eighth assignments of error to the extent indicated, having sustained plaintiff's third assignment of error on cross-appeal, and having found defendant's fifth assignment of error to be moot, the judgments of the trial court are affirmed in part, reversed in part, and this matter is remanded to the trial court for a further proceedings consistent herewith.

*Judgments affirmed in part*
*and reversed in part;*
*cases remanded.*

CLOSE and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.