JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff QSP, Inc. ("QSP") appeals from the judgment entered in its action for breach of a non-compete agreement and other causes of action. For the reasons set forth below, we affirm.
 {¶ 2} In 1987, defendant Robert B. Gibson was hired by QSP, a company that engages in school and youth group fund-raising through the sales of various products. On May 13, 1990, Gibson signed a Confidentiality, No-Solicitation and Non-Competition Agreement (the "Agreement") with QSP that provided in relevant part as follows:
 {¶ 3} "I recognize and acknowledge that the goodwill and patronage of the accounts of QSP, Inc. (`QSP') with fund-raising organizations are solely the property of QSP and that information concerning the identity and size of and contacts at such accounts * * * are the confidential business information of QSP. * * *
 {¶ 4} "Accordingly, and in consideration of my continued at-will employment by QSP, I give you my personal undertaking and promise that:
 {¶ 5} "1. During the period of my employment and for twelve (12) months following my separation for any reason from QSP, I will not:
 {¶ 6} "(a) contact, directly or indirectly, any fund-raising organization that I solicited or serviced during my employment by QSP (or its predecessor) for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or
 {¶ 7} "(b) solicit, directly or indirectly, any fund-raising organization that I solicited or serviced during my employment by QSP (or its predecessor) for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or
 {¶ 8} "(c) contact, directly or indirectly, any fund-raising organization in my Territory as described in Schedule A attached hereto (the `Territory'), (which schedule A may be modified by mutual agreement between QSP and me from time to time in writing) for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or
 {¶ 9} "(d) solicit, directly or indirectly, any fund-raising organization in my Territory for fund-raising purposes for my own benefit or for the benefit of any party other than QSP; or
 {¶ 10} "(e) commit any act which may tend to deprive QSP of its goodwill for disparage QSP's relationships with the fund-raising organizations in the Territory; or
 {¶ 11} "(f) engage in any of the following activities in my Territory: * * * render any service or advice or act as an officer, director, employee, agent, representative * * * of any business which is in competition with QSP in my Territory or competes for accounts that I solicited or serviced while employed by QSP."
 {¶ 12} The Agreement also prohibited Gibson from disclosing information to QSP's competitors, and required him to return various records to QSP following the termination of his employment. In addition, it prohibited Gibson from interfering with other QSP personnel or inducing them to leave QSP for the purpose of engaging in other fund-raising work.
 {¶ 13} Paragraph five (5) of the Agreement pertained to the enforcement of the Agreement and provided:
 {¶ 14} "I agree in light of the special nature of QSP's fund-raising business that if I violate this Agreement, appropriate relief by a court requires that the terms of paragraphs 1(a-f) and 3(b) will be extended for a period of twelve (12) months commending on the date of my last violation of this Agreement, that I will be responsible for all attorney fees, costs and expenses incurred by QSP by reason of any action relating to this Agreement, and that QSP will be entitled to such additional relief that a court deems appropriate."
 {¶ 15} On August 25, 1998, the parties agreed that the Territory would be defined as:
 {¶ 16} "Counties in which I (the employee) conducted or solicited business or had responsibility for conducting or soliciting business on behalf of QSP in the two-year period prior to separation from QSP."
 {¶ 17} In March 2003, Gibson accepted a sales position with Great American Opportunities, Inc., ("GA") a company which also engages in school and youth group fund-raising. On March 21, 2003, Gibson and GA agreed that Gibson would not disclose information or materials deemed confidential to others within GA's business, and would not cause or induce other GA employees to use such information. The GA Agreement further provided:
 {¶ 18} "* * * [F]or twelve months following the last day of your employment with QSP, you will not solicit, contact, directly or indirectly, any fund-raising organization that you solicited or serviced during your employment with QSP, and that you will not contact or solicit, directly or indirectly, any fund-raising organization in the Territory * * * *."
 {¶ 19} Defendant notified GA that his QSP territory included Cuyahoga, Lorain, Medina, Portage and Summit Counties.
 {¶ 20} On May 12, 2003, QSP filed this action against Gibson for preliminary and permanent injunctions and other relief. QSP alleged that Gibson had breached the Agreement by: (1) directly or indirectly contacting or soliciting his former QSP customers and customers within the Territory; (2) failing to return confidential information and/or trade secrets; and (3) improperly disclosing such information. QSP also asserted claims for tortious interference with QSP's contracts and business relationships, and misappropriation of confidential or trade secret information.
 {¶ 21} Defendant denied liability and claimed that by course of conduct, his QSP territory was determined on a "school-by school basis." He filed a counterclaim alleging abuse of process, tortious interference with a business relationship and unfair competition.
 {¶ 22} In early 2004, the trial court entered a preliminary injunction effective until June 19, 2004, enjoining defendant from, inter alia, directly or indirectly contacting, soliciting, or entering into any agreement with any fund-raising organizations within the QSP territory, i.e., Summit, Portage, Medina, Cuyahoga, and Lorain Counties. Defendant was also enjoined from disclosing confidential information.
 {¶ 23} The matter proceeded to trial on the remaining claims for relief on January 20, 2005. On January 18, 2005, QSP filed a motion to Bifurcate the Issue of Liability and the Issue of Attorney Fees and Litigation Expenses. Within this document, QSP contended that the award of attorney fees for breach of contract and the amount of such award were matters of law for the court. Alternatively, QSP stated that, in the event that the court concluded that the issue of the award of attorney fees must determined by the jury, then the court should determine the amount of such fees. Thereafter, the court indicated that the jury would decide whether attorney fees were warranted and the court would then decide the amount.
 {¶ 24} Essentially, the evidence at trial demonstrated that GA employees Greg Wirick, Greg Toth, and Deborah Maroney entered into agreements with schools which defendant had previously solicited for QSP, and defendant had extensive contact with these employees at the times of these transactions. The evidence further demonstrated that defendant did solicit some schools which had been his former customers for QSP, and entered into fund-raising agreements with some of these schools on behalf of GA. In addition, defendant solicited schools which had not been his prior QSP customers but are located within defendant's former QSP territory of Cuyahoga, Summit, Portage and Medina counties. Finally, the evidence demonstrated that defendant sent his customer list to GA.
 {¶ 25} On January 26, 2005, QSP submitted to the court proposed jury verdict forms which directed the jury to respond as follows:
 {¶ 26} "On the claim of breach of contract, where we find for Plaintiff, QSP, Inc., we award reasonable attorneys' fees, as indicated below: * * * *."
 {¶ 27} The court subsequently instructed the jury as to the manner of completing the jury verdict forms and advised, with regard to QSP's claim for breach of contract, that the jury was to render a verdict, and award an amount of damages. The jury was to then consider, with regard to the breach of contract claim, whether attorney fees would be awarded. (Tr. 1005). QSP did not object. The issue of costs was not mentioned within the charge and was not a part of the verdict forms.
 {¶ 28} The jury subsequently returned a verdict in favor of QSP on the breach of contract claim. The jury awarded QSP $50,000 in compensatory damages but further determined that it would not award any attorney fees. The jury also found in favor of QSP on the claim of tortious interference with business relationships and awarded it $500 in damages on this claim. The jury did not award QSP attorney fees on this claim, however. The jury found in favor of Gibson on QSP's remaining claim for misappropriation of trade secrets. The jury found in favor of QSP on Gibson's counterclaims for abuse of process and unfair competition. It found in favor of Gibson on the counterclaim for interference with business relationships but did not award him damages.
 {¶ 29} Following the trial, QSP filed a motion to tax costs in which it sought $16,686.97. Within this motion, QSP sought recovery of (1) $406.24 for witness fees and mileage; (2) $4,013.33 for recording depositions on videotape and playing the depositions at trial; and (3) $12,267.40 for depositions which were used at trial for cross-examination or impeachment purposes. In opposition, Gibson asserted that only $1,867.74 could be taxed as costs, i.e., the costs of witness fees and mileage and the costs directly related to the recording or playing of videotape depositions which were played for the jury at trial. The trial court awarded QSP $1,867.74 for costs. This amount represented $406.24 for witness fees and costs, and $1,461.50 for depositions played at in trial. QSP appeals and assigns six errors for our review.
 {¶ 30} QSP's first and second assignments of error are interrelated and state:
 {¶ 31} "The trial court erred in failing to award plaintiff its attorneys' fees."
 {¶ 32} "The trial court erred in denying, in whole or in part, QSP's motion to bifurcate, thereby causing the issue of attorneys' fees to be submitted to the jury."
 {¶ 33} Within these assignments of error, QSP claims the trial court erred insofar as it denied the motion to bifurcate and allowed the jury to determine whether QSP should be given attorney fees. QSP also asserts that, because the jury determined that defendant breached the Agreement, and awarded QSP damages, QSP should have been awarded attorney fees and costs under the plain language of the Agreement. QSP insists that the attorney fee provision should have been enforced and that the trial court erred in refusing to grant it judgment notwithstanding the verdict as to the issue of attorney fees for breach of contract.
 {¶ 34} In opposition, Gibson asserts that these claims are now barred because QSP invited the error by proposing a verdict form and jury interrogatory which directed the jury to determine whether attorney fees should be awarded on the breach of contract claim, and because QSP failed to object pursuant to Civ.R. 51. Gibson also asserts that, unlike other clauses within the party's agreement, the clause pertaining to attorney fees does not indicate that entitlement to fees is to be decided by the court and therefore must be determined by the jury to give effect to the jury trial guarantee contained within the Ohio Constitution, and to Ohio public policy. Finally, Gibson asserts that QSP is barred from raising the instant claims since it did not raise this objection until after the jury had been discharged.
 {¶ 35} With regard to procedure, we note that it is axiomatic that "an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams (1977),51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph one of the syllabus.
 {¶ 36} Moreover, Civ.R. 51(A) provides, in pertinent part, that "on appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury."
 {¶ 37} The filing of a memorandum of law prior to trial does not operate to preserve the right to contest the instruction on appeal.Gallery Realty, Co., Inc. v. Belgrave Square Dev. Co. (Mar. 4, 1994), Geauga App. No. 93-G-1755.
 {¶ 38} "Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." Ramage v. Cent. OhioEmergency Serv., Inc. (1992), 64 Ohio St.3d 97, 592 N.E.2d 828, paragraph three of the syllabus. In Miller v. McAllister (1959), 169 Ohio St. 487,494, 160 N.E.2d 231, 237, the Ohio Supreme Court defined "determinative issues" as "ultimate issues which when decided will definitely settle the entire controversy between or among the parties, so as to leave nothing for the court to do but to enter judgment for the party or parties in whose favor such determinative issues have been resolved by the jury."
 {¶ 39} With regard to the substantive law, we note that Ohio courts follow the American Rule with regard to the award of attorney fees.Com-Corp Industries, Inc. v. HH Mach. Tool Co. Of Iowa, (October 31, 1996), Cuyahoga App. No. 69318; Brzezinski v. Feuerwerker, Cuyahoga App. No. 74288, 2000-Ohio-2686. Under this rule, a prevailing party lacks entitlement to recover attorney fees absent a statutory authorization, a showing of bad faith, or an enforceable contract provision. Com-CorpIndustries, Inc. v. HH Mach. Tool Co. Of Iowa, supra.
 {¶ 40} An agreement to indemnify another for legal fees is generally enforceable. American Premier Underwriters v. Marathon Ashland Pipeline,
Mercer App. No. 10-03-12, 2004 Ohio 2222. However, a trial court retains the discretion to determine if a fee is actually warranted. Id; Curtisv. Am. Energy Development, Inc., Lake App. No. 2000-L-133, 2002-Ohio-3122.
 {¶ 41} In accordance with the foregoing, we conclude that QSP waived the issue of whether the court should have decided the issue of attorney fees. The memorandum was insufficient to preserve the issue. Moreover, QSP indicated that it had submitted "proper" interrogatories and the interrogatory at issue contained a provision for the jury to decide the issue of attorney fees. QSP did not object to the instructions as to the interrogatory. In any event, we believe that although the Agreement provided that defendant "will be responsible for all attorney fees, costs and expenses incurred by QSP by reason of any action relating to this Agreement," the jury, having been vested with authority over this issue, could properly determine whether attorney fees were actually warranted. Cf. American Premier Underwriters v. Marathon Ashland Pipeline, supra;Curtis v. Am. Energy Development, Inc., supra.
 {¶ 42} QSP notes that in Brzezinski v. Feuerwerker, supra, and inGoldfarb v. The Robb Report, Inc. (1995), 101 Ohio App.3d 134,655 N.E.2d 211, the court remanded for a hearing on attorney fees after a jury determined that the defendant had breached the parties' agreement. We find these cases distinguishable from this matter however, because the jury in the instant matter expressly determined that attorney fees were not warranted, and no such finding was made in Brzezinski or Goldfarb.
 {¶ 43} The first and second assignments of error are without merit.
 {¶ 44} QSP's third assignment of error states:
 {¶ 45} "The jury's denial of plaintiff's request for attorneys' fees was not supported by sufficient evidence and was against the manifest weight of the evidence."
 {¶ 46} With regard to our standard of review, we note that a judgment supported by some competent, credible evidence will not be reversed on appeal. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273. Further, an appellate court will not overturn a jury verdict as against the manifest weight of the evidence if the verdict is supported by "some competent, credible evidence going to all essential elements of the case." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 47} As noted previously, notwithstanding a contractual provision for the payment of attorney fees, the court retains discretion to decide whether attorney fees are actually warranted. Cf. American PremierUnderwriters v. Marathon Ashland Pipeline, supra; Curtis v. Am. EnergyDevelopment, Inc., supra; cf. Becker Equip. v. Flynn, supra.
 {¶ 48} The entitlement to such fees and the amount of attorney fees lies within the sound discretion of the trial judge. Gavin v. PolamBldg. Co. (Aug. 12, 1993), Cuyahoga App. Nos. 63368, 63458; Drake v.Menczar (1980), 67 Ohio App.2d 122, 425 N.E.2d 961. In this matter, as discussed previously, the jury was vested with authority to determine the issue of attorney fees. Viewing the record as a whole, we note that the time period at issue was relatively short, the jury awarded a relatively small amount of damages for breach of contract, the jury determined that QSP was not entitled to punitive damages for tortious interference with business relationships, the jury found in favor of defendant on QSP claim for misappropriation of trade secrets, and found in favor of Gibson on the counterclaim for interference with business relationships which did not include an award of damages to Gibson. We find no prejudicial error viewing the record as a whole.
 {¶ 49} This assignment of error is overruled.
 {¶ 50} QSP's fourth assignment of error states:
 {¶ 51} "The trial court erred in excluding evidence in support of plaintiff's claim for misappropriation of trade secrets that had already been admitted during the preliminary injunction hearing."
 {¶ 52} Civ.R. 65(B) provides:
 {¶ 53} "Preliminary injunction.
 {¶ 54} "(2) Consolidation of hearing with trial on merits. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Evenwhen this consolidation is not ordered, any evidence received upon anapplication for a preliminary injunction which would be admissible uponthe trial on the merits becomes part of the record on the trial and neednot be repeated upon the trial. This subdivision (B)(2) shall be soconstrued and applied as to save the parties any rights they may have totrial by jury." (Emphasis added).
 {¶ 55} "The manifest purpose and proper application of the rule is to conserve the time and resources of the court and of litigants where, in an action whose only ultimate objective is a permanent injunction, the same evidence will be applicable in both the preliminary and merit stages of the cause. See McCormac, Ohio Civil Rules Practice (1970) 350, Section 14.10. The rule is not intended to permit a trial court to advance, consolidate, and try claims and issues that differ from those which are unique to the application for a preliminary injunction." Hershhorn v.Viereck (1985), 27 Ohio App.3d 242, 243, 500 N.E.2d 379 (citing McCormac, Ohio Civil Rules Practice (1970) 350, Section 14.10); see also Civ.R. 65, staff note 3.
 {¶ 56} The object of Civ.R.65(B)(2) is convenience: to avoid duplicating foundational grounds and objections to admissibility at trial when the same matters were considered at the preliminary hearing. Statev. Ramey (Sep. 3, 1999), Clark App. No. 99CA0002.
 {¶ 57} A trial court has discretion in whether or not to admit evidence. State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804. The admission of evidence by a trial court will not be reversed absent an abuse of discretion. A decision that is an abuse of discretion is one that is "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 58} In this matter, plaintiff sought to admit into evidence all of the evidence received upon its application for the preliminary injunction. The trial court denied this request and determined that the jury would receive only those exhibits admitted in connection with the trial on the merits.
 {¶ 59} We find no abuse of discretion. This matter did not simply involve consolidation of a preliminary injunction with trial on the merits; trial on the merits involved additional claims and counterclaims. Some of the documents from the preliminary injunction were not previously identified for the jury and were not shown to have been admissible in the jury trial.
 {¶ 60} This assignment of error is overruled.
 {¶ 61} QSP's fifth and sixth assignments of error are interrelated and state:
 {¶ 62} "The trial court erred in failing to award QSP its costs and expenses."
 {¶ 63} "The trial court erred in denying, in part, QSP's motion to tax costs."
 {¶ 64} "Except when express provisions therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." Civ.R. 54(D). However, the categories of litigation expenses comprising "costs" are limited.Centennial Ins. Co. v. Liberty Mut. Ins. Co. (1982), 69 Ohio St.2d 50,430 N.E.2d 925.
 {¶ 65} "Costs are generally defined as the statutory fees to which officers, witnesses, jurors and others are entitled for their services in an action and which the statutes authorize to be taxed and included in the judgment." Williamson v. Ameritech Corp., 81 Ohio St.3d 342,1998-Ohio-347, 1998-Ohio-625, 691 N.E.2d 288, quoting Benda v. Fana
(1967), 10 Ohio St.2d 259, 227 N.E.2d 197, paragraph one of the syllabus. "The subject of costs is one entirely of statutory allowance and control." Williamson, supra, quoting State ex rel. Michaels v. Morse
(1956), 165 Ohio St. 599, 607, 138 N.E.2d 660.
 {¶ 66} R.C. 2335.06 sets forth payment standards for witness fees and mileage reimbursement and indicates that these items are to be to be taxed in the bill of costs.
 {¶ 67} In addition, in Cave v. Conrad, 94 Ohio St.3d 299, 2002-Ohio-793,762 N.E.2d 991, the Supreme Court of Ohio noted that the Rules of Superintendence provide that videotaped deposition costs are an exception to the long-standing principle that costs are allowed solely by statutory authority. Id., citing State ex rel. Williams v. Colasurd (1995),71 Ohio St.3d 642, 645-646, 646 N.E.2d 830, 833, and citing Gold v. OrrFelt Co. (1985), 21 Ohio App.3d 214, 216, 487 N.E.2d 347, 349.
 {¶ 68} Sup.R. 13 provides:
 {¶ 69} "(D) Costs; Videotape Depositions
 {¶ 70} "(1) The expense of videotape as a material shall be borne by the proponent.
 {¶ 71} "(2) The reasonable expense of recording testimony on videotape, the expense of playing the videotape recording at trial, and the expense of playing the videotape recording for the purpose of ruling upon objections shall be allocated as costs in the proceeding in accordance with Civil Rule 54.
 {¶ 72} "(3) The expense of producing the edited version of the videotape recording shall be costs in the action, provided that the expense of the videotape, as a material, shall be borne by the proponent of the testimony.
 {¶ 73} "(4) The expense of a copy of the videotape recording . . . shall be borne by the party requesting the copy."
 {¶ 74} Conversely, the "expense of videotape depositions not used asevidence at trial is to be borne by the party taking such depositions and not taxed as costs in the action." (Emphasis added). Cave v. Conrad,
supra; Amerifirst Savings Bank of Xenia v. Krug (Dec. 10, 1999), Montgomery App. Nos. 17345, 17349, citing Barrett v. Singer Co. (1979),60 Ohio St.2d 7, 8-9, 396 N.E.2d 218. Generally, a deposition which is used only for impeachment purposes is not so vital to the litigation to be considered as a necessary litigating expense and taxed as a cost; however, exercising its discretion, the court may determine that such deposition is so vital for impeachment purposes as to become a litigating expense. Jones v. Olcese (1991), 75 Ohio App.3d 34, 598 N.E.2d 853.
 {¶ 75} In accordance with the foregoing, we hold that the trial court properly awarded QSP $406.24 for witness fees and costs, and $1,461.50 for depositions played as evidence at trial. We are unable to conclude that the trial court abused its discretion in denying costs for depositions not used as evidence at trial but used instead for impeachment or cross-examination.
 {¶ 76} These assignments of error are overruled.
Affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Gallagher, J., concur.