Rogers et al. *v.* The Standard Steel Castings Co. et al.

*Conversion—Measure of damages—Market value or contract price—Misdelivery of goods by carrier—Damages fixed by bill of lading.*

1. The rule that the market value is the measure of damages for the wrongful conversion of personal property is subordinate to the fundamental rule that the owner must be fully compensated.

2. Where personal property wrongfully converted has a peculiar value to the owner because of a contract with a solvent buyer, under which he had sold and would deliver such property at a price higher than the market value, the measure of damages is such contract price.

3. Where the measure of damages for the misdelivery of personal property by a common carrier is fixed by the bill of lading the owner cannot by bringing an action for unlawful conversion recover a greater amount than could have been recovered by way of damages for a breach of the terms of the bill of lading.

(Decided June 24, 1922.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Krueger & Pelton,* for plaintiffs in error.
*Mr. S. H. West,* for The New York Central Railroad Company.
*Mr. Neil P. Beall* and *Messrs. Dustin, McKeehan, Merrick & Stewart,* for The Standard Steel Castings Company.

MAUCK, J. In 1917 the plaintiffs, who were doing a general brokerage business, contracted with The Standard Car Wheel Company of Cleveland for the sale and delivery of thirty tons of ferro manganese. Delivery was to be made in the month of July. The plaintiffs caused the ferro manganese to be delivered to The Pennsylvania Railroad Company, which in turn delivered it to The New York Central Railroad Company for delivery to The Standard Car Wheel Company at Cleveland. The initial shipper so illegibly billed the car as to cause the initial carrier to decipher the consignee as "The Standard Caid Bul. Company." There is no company with this latter designation, so when the shipment was received at Cleveland the railroad company inquired of The Standard Steel Castings Company, a consumer of this ore, and this company claimed the shipment, received it, and converted the same to its own use on the 29th day of July, 1917, of which fact plaintiffs were unaware until some time in August. At this time, it is agreed, the market value of the ore was $9,828.30. This amount, with interest, has been paid the plaintiffs. The plaintiffs had, however, by their contract with The Standard Car

Wheel Company, sold this shipment for $11,373, and that company was ready, able and willing to have received and paid that price for the ore, in accordance with its contract. The plaintiffs brought their action in the common pleas court for $1,490.10, the difference between the sum paid them by the defendants, representing the market value of the ore, and the amount for which the plaintiffs had actually sold the ore to the car wheel company.

A jury was waived and the trial court found for the defendants. Error is prosecuted to this court, the sole question being whether the amount to which plaintiffs were entitled was the market value of the ore at the time of its conversion or the amount at which the plaintiffs had sold the ore, and which they would have realized therefor had the conversion not been effected.

There is no question that the rule which generally obtains is that the damages awarded for the conversion of personal property are determined by the market value of such property at the time and place of conversion. (4 Sutherland on Damages [4 ed.], page 4209.) Authorities upon this general proposition might be cited almost indefinitely. 4 Sutherland on Damages (4 ed.), 4226, Section 1113, says:

"The market value will govern rather than any special value to the owner arising from his having contracted it or otherwise, the defendant not being apprised of such special value. If there is a market value at the place of conversion it will be adopted though the property is intended to be shipped for sale at another place."

If the first sentence of the quoted excerpt is to be given universal application the plaintiffs in this case could not recover. While the text is supported by the authorities cited thereto, it is not true that the market value is the universal criterion. For instance, Sutherland, in Section 1117, cites with apparent approval a British case, *France* v. *Gaudet*, L. R., 6 Q. B., 199. In that case a wine merchant had bought wine at fourteen shillings per dozen, and had contracted for its resale at twenty-four shillings. The goods, meanwhile, and before delivery under the resale, had been converted by another. The court permitted recovery on the valuation fixed by the resale, not on the ground that the plaintiff was entitled to any special damages but because his ordinary damages were enhanced by the special value fixed by special circumstances. The court said, page 203:

"Under ordinary circumstances the direction to the jury would simply be to ascertain the value of the goods at the time of the conversion, and in case the plaintiff could, by going into the market, have purchased other goods of the like quality and description, the price at which that would have been done would be the measure of damages.

"It was, however, admitted on the trial, that in the present case that that course could not have been pursued, inasmuch as champagne of the like quality and description could not have been purchased in the market, so as to enable the plaintiff to fulfill his contract with Captain Hodder.

"We are of opinion that the true rule is to ascertain the actual value of the goods at the time of the conversion; and that a *bona fide* sale having

been made to a solvent customer at 24*s.* per dozen, which would have been realized had the plaintiff been able to obtain delivery from the defendants, the champagne had, owing to these circumstances, acquired the actual value of 24*s.* per dozen; and we think that, in the present case, that ought to be the measure applied.''

The editor of Lawyers' Reports Annotated (52 L. R. A., 51), says:

''The usual rules in tort cases with reference to the proximity of the loss of profits to the wrongful act, and with reference to contingency or uncertainty, apply to cases of conversion, and the fact that a conversion passes the thing converted from one to another does not import into the subject the rules of law as to sales of property with reference to non-recovery of profits lost, unless they were within the contemplation of the parties at the time of the act in question. Nor does it affect the right to consider evidence of all the facts and circumstances tending to show damages or their amount, where there are no *data* or elements of certainty from which compensation can be readily estimated.

''Neither do the rules with reference to contract cases, by which the allowance of profits lost as damages is made to depend upon the existence of special circumstances known to the party making the breach, seem to apply.

''Thus, there is no analogy between cases of contract in which the parties contract for the sale and delivery of a specified chattel, and the vendee gives notice to the vendor of the precise object of the purchase, and a case in which profits are prevented

by the conversion of the things sold; as in the case of contract special damages reasonably resulting from the breach may be considered to be within the contemplation of the parties, but in cases of trover it is not in general special damage which can be recovered, but a special value attached by special circumstances to the article converted. *France* v. *Gaudet*, L. R., 6 Q. B., 199, 40 L. J., Q. B. N. S., 121, 19 Week. Rep., 622, *dictum.*

"In ascertaining damages where there is an interference with, or a withholding of, property, a gain prevented, if provable, is a subject for recovery. *Grubb* v. *Burford*, 98 Va., 553, 37 S. E., 4.

"And where personal property is wrongfully taken or detained, whether by force, fraud, or process of law, it may be shown that had the owner retained the possession he would have derived a larger profit from the use of the property than the interest upon its value, or that he had contracted to sell it to a solvent purchaser at an advance upon the market price, or that, when wrongfully taken or converted, it was in the course of transportation to a profitable market where it would certainly have arrived; and in each case the difference between the market value when the right of action accrued and the advance which the owner, had he retained possession, would have realized, should be included in the amount for which judgment is rendered. *Suydam* v. *Jenkins*, 3 Sandf. 614, *dictum.*"

An almost universal exception to the market-value rule is applied in case the property converted consists of purely personal belongings such as clothing, household goods, portraits, manuscripts, etc. (*Erie Rd. Co.* v. *Steinberg*, 94 Ohio St., 189, L.

R. A., 1917B, 787, and note; 9 Am. & Eng. Ann. Cases, 1148), and in cases of any kind of property where the conversion occurs at a time and place where no sufficient market exists to establish a value adequate to afford the plaintiff fair compensation. (Note to *Watt* v. *Nevada Central Rd. Co.*, 62 Am. St., 791; 8 R. C. L., 487.)

The market-value rule is therefore not a universal rule. Take the instance of converted household goods. It cannot be seriously urged that such goods have no market value. The markets of every city of the state testify to the contrary. The courts refuse to subject that class of goods to that rule, not because they have no market value, but because such market value does not afford a plaintiff fair and just compensation. This demonstrates that the market-value rule is not a fundamental rule, but one of expediency. It is generally adopted because generally the owner can make himself whole by providing himself a substitute for the converted goods by buying on the market. It is only a subordinate rule, however, applicable where it accomplishes the purpose of the fundamental rule. The fundamental rule is that the owner must be compensated for the loss sustained by reason of the wrongful conversion of his property.

The supreme court of Connecticut, in a case involving household goods, has gone to the root of the matter by showing the reason for the apparent exception so far as certain classes of personal property are concerned. (*Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn., 198; 3 Am. & Eng. Ann. Cases, 889.) In the opinion, at page 200, it was said:

"The cardinal rule is that a person injured shall receive fair compensation for his loss and injury, and no more. * * * Commonly in cases of conversion the loss is the value of the property. * * * Commonly the value of the property as representing the owner's loss is its market value, if it have one, since thereby is indicated the cost of replacing. Hence, the subordinate rule of general application appealed to by the defendant. But the principal rule, which seeks to give fair compensation for the loss, is the paramount one, and ordinarily when the subordinate one fails to accomplish the desired result it yields to an exception or modification."

In *Aufderheide* v. *Fulk,* 64 Ind. App., 149, the appellate court of Indiana quotes with approval from the *Baker case,* and, while that court recognizes that the market value at the time and place of conversion generally constitutes the measure of damages, it adds, page 153:

"It is true that the measure of damages in cases of conversion is as stated in many instances, but such rule, while generally recognized, is not applicable to all kinds of property under all conditions, and is subject to some exceptions. The underlying principle of universal application is that of fair and just compensation for the loss or damage sustained. * * * Where subordinate rules for the measure of damages run counter to the paramount rule of fair and just compensation, the former must yield to the principle underlying all such rules. For the loss of such property so situated and used, the measure of damages in case of conversion is the value to the owner under all the circumstances, based on actual damages sustained by being de-

prived of his property, not including any mere sentimental or fanciful value that he may for any reason place upon it.''

In *Curry* v. *Catlin* (12 Wash., 322), 41 Pac. Rep., 55, the supreme court of Washington was considering a case of the wrongful attachment of hops. The first paragraph of the syllabus reads:

''In an action for the wrongful attachment of property which the owner had sold, the value of the property, in estimating the measure of damages, is the price contracted for, though it is in excess of the market value.''

The jury were so instructed, and of this instruction the court said:

''It certainly stated the true measure of damages, for, while the market value is the value which is to be determined, in the absence of a sale, yet the value is the fundamental rule, and the market price is only one of the evidences of this value; and the value as between the plaintiffs and defendant may, according to circumstances, be higher or lower than the market. 2 Sedg. Dam., §433. It is the duty of the party taking the property of another to make reparation to the party who turns out ultimately to be injured, by placing him, as to the property, in the same situation in which he was before the trespass was committed. * * * We do not think there is any controversy in the law on this subject, and it is evident that in this case, if the plaintiffs had sold their hops for 20 cents a pound, that, as to them, was the actual value of the hops.''

To the same effect is the following from 8 Ruling Case Law, page 431:

"The fundamental and cardinal principle of the law of damages is that the injured party shall have compensation for the injury sustained. Hence, actual pecuniary compensation is the general rule, whether the action is on contract or in tort, except where the circumstances warrant the allowance of exemplary damages. * * * The injured party is entitled to recover full indemnity for his loss, and to be placed as near as may be in the condition which he would have occupied had he not suffered the injury complained of."

To the general rule that the measure of damages in trover is the value of the property at the time of the conversion, with interest, there are exceptions as well established as the rule itself and founded upon the same principle, viz., that the plaintiff ought to recover such damages as he has actually sustained, and no more. *Curtis* v. *Ward,* 20 Conn., 204.

Mr. A. C. Freeman, the editor of American Decisions, in discussing the market-value rule with reference to the destruction of property, said, 62 American State Reports, page 792:

"The market value may properly be disregarded as a test of the damages suffered from the destruction of property: 1. Where, though the articles in question have some market value, such value is clearly not the true test of the injury suffered by the plaintiff; and 2. Where, from the situation of the property or its character or from some other cause, it cannot be said to have a market value."

This case falls within the first classification thus made by Mr. Freeman. It is clearly a case "where, though the articles in question have some market

value, such value is clearly not the true test of the injury suffered by the plaintiff.''

The foregoing is in harmony with the holdings of our own court. In *B. & O. Rd. Co.* v. *O'Donnell,* 49 Ohio St., 489, no question was involved of the kind raised in the case at bar. The court, however, had occasion to consider generally the measure of damages in conversion, and omitting any reference to the market value, disposed of the question by saying, page 503:

''If there was a conversion of the goods by the defendant, a different rule of damages applies, which is the value of the property at the time of its conversion.''

This is the rule as stated by Sedgwick, who says that there is no other way of stating the rule in conversion; that the great advantage of the rule is its elasticity, in that it can be stretched to cover the facts of any case as such case presents itself. (2 Sedgwick on Damages [9 ed.], Secs. 493, 493a.)

In *Erie Rd. Co.* v. *Steinberg,* 94 Ohio St., 189, the court in the third paragraph of the syllabus states an exception to the market-value rule, but in the second paragraph holds to the general rule in the *O'Donnell case*:

''In a suit for conversion, where the facts do not authorize the assessment of exemplary damages, the general rule for the measure of damages is *the value* of the property at the time of the conversion.''

Our conclusion is that the cardinal or fundamental rule is that the plaintiff shall be fairly compensated for the loss sustained by reason of his being wrongfully deprived of his property; that

ordinarily the most practicable method of ascertaining this loss is to ascertain its market value, but that the market-value rule is subordinate to the cardinal rule to the effect, that, where, because of the nature or location of the property, or its peculiar value to the plaintiff because of being sold and deliverable to a solvent purchaser at a higher price than the market value, the market-value rule would not accomplish the results contemplated under the cardinal rule, such subordinate rule cannot be applied.

Applying these rules to the instant case we see that had the plaintiffs not been deprived of their property by the wrongful conversion thereof by The Standard Steel Castings Company they would have been richer to the extent sued for. They did not know that this conversion occurred until it was too late for them to go into the market and fill their contract. They cannot be fairly compensated until recovery is had in accordance with the prayer of their petition.

A different question arises as to the railroad company. Between it and the plaintiffs the relations were contractual, and, though the pleadings in the case made an apparent case of conversion, "if we look beyond its technical denomination, the scope and effect of the action is nothing more than that of an action for damages against the delivering carrier." (*Georgia, Florida & Alabama Ry. Co.* v. *Blish Milling Co.,* 241 U. S., 190.) The railroad company only undertook to deliver the shipment for the plaintiffs in accordance with the terms of the contract entered into at the time of shipment, and it has been repeatedly held that under the con-

tract of shipment the carrier is not liable beyond the market value of the goods unless the shipper at the time of shipment advised the carrier of the special circumstances requiring expedition in delivery. The railroad company had no knowledge of the plaintiffs' contract for the goods shipped and cannot be held for any greater sum than that heretofore paid the plaintiffs.

The judgment as to the railroad company is affirmed, and as to The Standard Steel Castings Company is reversed, and as to it the cause is remanded for new trial.

*Judgment accordingly.*

SAYRE, P. J., and MIDDLETON, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges VICKERY, INGERSOLL and SULLIVAN of the Eighth Appellate District.