OPINION
Defendants-appellants, Morrison Road Development Company, Inc., and Steven M. Geiger, appeal from a judgment of the Franklin County Court of Common Pleas finding them in contempt of court for failing to comply with a court order to construct a dedicated road with utilities. In addition, appellants appeal the jury's decision to find them liable for various claims, including breach of contract and conversion, which were brought by plaintiffs-appellees, Valerio Dalicandro, Linda Dalicandro and VLD Grading, Inc.
Appellees' claims stem from the following facts. On December 8, 1993, appellees and appellants entered into a real estate purchase contract whereby appellants were to convey 4.5 acres of property located at the end of Claycraft Road in the city of Columbus. The contract was contingent on appellants constructing a road extending from Claycraft Road. The road was to be built with sewers. Although appellants had not constructed the road, a general warranty deed on the 4.5 acres was executed and delivered to appellees on November 27, 1995. The parties also entered into a closing agreement, whereby appellants again promised to build the dedicated road with sewers and a culvert.
On October 31, 1997, the parties entered into another real estate purchase contract, whereby appellants were to convey 3.308 acres westerly adjacent to the 4.5 acres previously transferred. At the time the parties contracted to convey the 3.308 acres, appellants had not built the dedicated road. However, in the real estate purchase contract, appellants promised to construct the dedicated road pursuant to city specifications with sewers and a culvert. As well, appellants promised to "clean up" the 3.308 acres within fourteen days. A deed on the 3.308 acres was executed and delivered to appellees on January 23, 1998. At the time of the closing, appellants had not constructed the dedicated road; however, the parties entered into another closing agreement obligating appellants to construct the road with sewers and a culvert.
Appellees were using the Claycraft property to store gravel that was eventually used by local developers. Trucks would either transport gravel to the property for storage, or remove the gravel for delivery to the local developers. However, on June 11, 1998, appellants blocked pathways to and from appellees' Claycraft property. Trucks were unable to leave the property because of the blocked paths. Eventually, appellees would remove the obstacles and regain control over their trucks. However, appellants re-blocked the pathways and would not allow appellees to haul gravel from their property. These activities took place until June 16, 1998, after the trial court issued a temporary restraining order prohibiting appellants from engaging in such conduct.
Thereafter, appellees filed suit against appellants alleging various claims, including breach of contract for failure to construct the dedicated road and utilities, breach of contract for failure to clean up the 3.308 acres of land, conversion of trucks, gravel and equipment, interference with appellees' business relationships, and trespass.
Before the trial commenced, the parties entered into an agreement approved and adopted on June 15, 1999, as an order of the trial court. In adopting the agreement, the trial court ordered appellants to "construct a 24 foot flex paved road over the .969 acres owned by [appellants] from the terminus of Claycraft Road." The road was to be approved by the city of Columbus. Subsequently, a jury trial commenced. The jury found appellants liable for appellees' claims of breach of contract, conversion and interference with a business relationship. In addition, the jury held Geiger personally liable for appellees' damages under the doctrine of piercing the corporate veil.
On October 15, 1999, the trial court held a hearing to determine whether appellants should be held in contempt for failure to comply with its June 15, 1999 specific performance order. After the hearing, the trial court found appellants in contempt. However, the trial court allowed appellants to purge the contempt by notifying the court when plans for the road, sewers and culvert were approved by the city of Columbus and by completing construction of the road and utilities by December 13, 1999. Because the road and utilities were not completed by the trial court's deadline, another contempt hearing was held on May 19, 2000. After the hearing, the trial court renewed its contempt finding and ordered Geiger to serve ten days in jail.
Appellants appeal, raising eighteen assignments of error:
 I. The Trial Court erred in holding Appellant [sic] in contempt pursuant to the May 19, 2000 Hearing as a matter of both fact and law.
 II. The Trial Court erred when it improperly denied (restricted) the testimony of Attorney Ben Hale who had specifically been engaged for the purpose of assisting the Court at the Contempt Hearing.
 III. The Trial Court erred by wrongful reference and implication to Appellants being previously found in contempt.
 IV. The Trial Court erred in not allowing Appellant [sic] to effectively cross-examine Appellees' main witness in the May 19, 2000 Contempt hearing.
 V. The Trial Court erred in failing to grant Appellant's [sic] motion for contempt against Appellee [sic].
 VI. The Trial Court erred when it gave the Jury Instruction regarding Conversion (Trial Transcript (TT) pages 927-929) because it instructed the jury to assume that Appellee's [sic] equipment was trapped on Appellee's [sic] property, thereby providing conclusions of fact to the jury and taking the burden of proving the "exercise of dominion and control over the property of another" element away from Appellee [sic]. As such, this instruction constituted Plain and Reversible Error.
 VII. The Trial Court erred in allowing the jury to consider punitive damages because the Trial Court improperly tainted the jury on the issue of conversion by instructing the jury that the Defendants had "trapped" Plaintiffs' trucks and equipment.
 VIII. The Trial Court erred by entering judgment for the Plaintiff [sic] for Punitive damages because when it gave the Jury Instruction regarding "Punitive Damages" (TT, pages 930-931) it improperly defined "Actual Malice" and there was insufficient evidence to go to the jury on this issue. As such, the Jury Instruction as given constituted Plain and Reversible Error.
 IX. The Trial Court erred by entering judgment for the Plaintiff [sic] for Conversion because the jury verdict was against the manifest weight of the evidence presented at trial.
 X. The Trial Court erred when it denied Appellant Steven Geiger's Motion to Dismiss and Motion for Directed Verdict as to claims against Steven Geiger individually on the theories of Alter Ego and Piercing the Corporate Veil, as Mr. Geiger was not a proper party to the lawsuit and no allegations regarding Alter Ego or Piercing the Corporate Veil were ever contained in the Complaint or the Amended Complaint.
 XI. The Trial Court erred when it gave the Jury Instruction regarding Alter Ego (TT, pages 940-942) over Appellants' objection (TT, page 951) because that instruction failed to instruct the jury on the issue of Fraud, a requirement for the application of the Alter Ego Theory.
 XII. The Trial Court erred when it allowed the jury to consider breach of contract where the evidence clearly established that no valid contract was in force relative to the January 23, 1998 closing, as a matter of law.
 XIII. The Trial Court erred by allowing parole evidence, when over the objection of Counsel for Appellant [sic], Appellee was allowed to testify as to his personal interpretation of the clause contained at the bottom of page 2 of the Real Estate Purchase Contract, dated December 8, 1993, identified as Plaintiff's Exhibit 7.
 XIV. The Trial Court erred when it refused to instruct the jury on the law of novation.
 XV. The Trial Court erred by entering judgment for the Plaintiff [sic] for Breach of Contract for failure to build a road because the jury verdict was against the manifest weight of the evidence presented at trial.
 XVI. The Trial Court erred by not granting Appellants' Motion for Remittitur, Judgment Notwithstanding the Verdict and New Trial, because the jury verdict was the result of passions inflamed through rhetoric contained in the closing argument of Counsel for Appellee [sic].
 XVII. The Trial Court erred by not granting Appellants' Motion for Remittitur, Judgment Notwithstanding the Verdict and New Trial, because the jury verdict was excessive, inconsistent and against the manifest weight of the evidence as presented at trial.
 XVIII. The Trial Court erred and committed a clear abuse of discretion when it denied Appellants' Motion to Consolidate the cases of Dalicandro, et al. v. Morrison Road Development Company, Inc., et al and Geiger, et al. v. King, et al.
We begin with appellants' fifth assignment of error, which concerns their motion for contempt against appellees. Appellants asked the trial court to find appellees in contempt for violating the trial court's June 15, 1999 order that all parties "pledge mutual cooperation to do all reasonable steps in building the road." Appellants claim that appellees violated this order when they had an engineering consultant send a letter to the city of Columbus discussing city policy on land development. Appellants assert that the trial court erred in not granting their motion for contempt against appellees. We disagree.
Neither the contents of the letter, nor the sending of the letter itself, constitutes uncooperative behavior in violation of the June 15 agreement; rather, as noted by the trial court, the letter discusses issues pertaining to the road construction. As such, the trial court did not err in denying appellants' motion for contempt. Accordingly, we overrule appellants' fifth assignment of error.
Appellants' sixth and seventh assignments of error concern the following jury instruction regarding appellees' conversion claim:
 The plaintiffs allege that the defendants blocked the plaintiffs' ingress/egress from the plaintiffs' property, thereby denying the plaintiffs use and enjoyment of the trucks and equipment owned by the plaintiff, VLD Grading, Inc., which were trapped on the premises and the gravel stored on the premises. * * *
Appellants contend that the trial court committed reversible error in providing the instruction because it improperly led the jury into assuming that appellees' trucks and equipment were "trapped." Thus, according to appellants, the instruction improperly ordered the jury to find against appellants on appellees' conversion claim and their request for punitive damages on the conversion claim. We disagree with appellants' contentions.
Appellants raised no objection at trial to the above instruction. The failure to object to a jury instruction generally results in the waiver of the issue on appeal. Goldfuss v. Davidson (1997), 79 Ohio St.3d 116,121; Civ.R. 51(A). Nonetheless, an appellate court may recognize waived error if it rises to the level of plain error. Goldfuss, at syllabus. However, in civil appeals, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where the otherwise waived error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id. According to the Ohio Supreme Court, "a `plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207, 209.
Here, we conclude that the claimed error is not obvious, but is identified only by a certain, alternative interpretation of the instruction. The jury could reasonably determine that the instruction only contained allegations making up the conversion claim. Accordingly, appellants' claimed error does not rise to the level of plain error and we overrule their sixth and seventh assignments of error.
Appellants' eighth assignment of error concerns the jury instruction on punitive damages. The trial court informed the jury that they could award punitive damages on the conversion claim if they concluded that appellants committed the tortious act with actual malice. The trial court defined actual malice as "a conscious disregard for the rights and safety of others that has great probability for causing substantial harm." Appellants assert that the trial court committed reversible error in providing the instruction because it failed to inform the jury that a person must act "knowingly" for an improper purpose in order to meet the requirements of actual malice. We disagree.
Appellants neither objected to the trial court's definition of actual malice nor requested an additional instruction setting forth the above "knowingly" requirement. Thus, appellants waived the issue, absent plain error. See Civ.R. 51(A); Goldfuss, at syllabus; Schade, at 209.
Here, we conclude that the actual malice instruction does not rise to the level of plain error. According to the Ohio Supreme Court:
 Actual malice, necessary for an award of punitive damages, is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. [Preston v. Murty (1987), 32 Ohio St.3d 334, syllabus.]
Here, the jury instruction on actual malice reproduces the second alternative definition provided by the Ohio Supreme Court. In addition, the instruction did not prejudice appellants because their proposed "knowingly" language was essentially conveyed in the actual malice instruction through the use of the term "conscious disregard." Appellants also assert that the trial court erred in providing the punitive damages instruction because the record contains insufficient evidence for such damages. Again, we disagree.
According to the Ohio Supreme Court, when a party seeks punitive damages on a claim that an individual acted in "conscious disregard" of a person's rights and safety, the "trial court must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm." Preston, at 336. In addition, the record must contain evidence "revealing that the party consciously disregarded the injured party's rights or safety." Id.
Here, the record demonstrates that Geiger learned of appellees' business operations through conversations with Valerio Dalicandro ("Dalicandro"). In addition, appellants were able to observe appellees' business operations by working near appellees' gravel site. Through this evidence, a jury may properly infer that appellants were aware that their acts of conversion had a great probability of causing substantial harm to appellees.
The record also establishes that appellants committed the conversion with a "conscious disregard" for appellees' rights. Rocco Dalicandro, an employee of appellees, testified that, after Geiger blocked one particular path, he stated "[s]omething to the effect of, `Now where are you going to bust through,' or `Where are you going to bust out?'" Another witness heard Geiger state, "If you guys want in, you can tell your boss that he owes me 70 some thousand dollars." Appellants' "conscious disregard" for appellees' rights is also established in a phone conversation Geiger had with Dalicandro on the first night of the blockade. Early in the conversation, Geiger said to Dalicandro, "Now do you want to act like a man and talk about this money?" As well, the phone conversation included Geiger calling Dalicandro a "f___ing dago, son of a bitch."
Accordingly, we conclude that the record contains ample evidence supporting appellees' punitive damages claim. As such, the trial court did not err in allowing the jury to consider the request for punitive damages. Therefore, based on the above, we overrule appellants' eighth assignment of error.
In their ninth assignment of error, appellants contend that the jury's decision to find them liable for conversion is against the manifest weight of the evidence. We disagree. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
A person is liable for the tort of conversion by exercising wrongful dominion over another's property "in exclusion of the right of the owner, or withholding it from his [or her] possession under a claim inconsistent with his [or her] rights." Zacchini v. Scripps-Howard Broadcasting Co. (1976), 47 Ohio St.2d 224, 226, reversed on other grounds (1977), 433 U.S. 562; Ohio Tel. Equip. Sales, Inc. v. Hadler Realty Co. (1985), 24 Ohio App.3d 91, paragraph one of the syllabus.
In this case, the record establishes that, from June 11 to June 16, 1998, appellants committed conversion on appellees' trucks, gravel and equipment located on the Claycraft property. On June 11, 1998, appellants placed vehicles and machinery in front of the various pathways leading to and from appellees' Claycraft property. Indeed, as noted above, one witness observed Geiger personally placing machinery in one particular path and stating "[s]omething to the effect of, `Now where are you going to bust through,' or `Where are you going to bust out?'" Appellants also cut trenches in a path leading to and from the site. According to one employee of appellees, it would have been impossible for a truck to safely pass through the trenches. The record establishes that, once all of these obstacles were in place, appellees were unable to move their trucks or gravel from the Claycraft property. Appellants committed conversion of the trucks by placing these obstacles in the paths leading to and from appellees' property.
Appellees' conversion claim is not defeated through the testimony of Lynn Willhite, who testified that the trenches did not prevent total access to and from the gravel site because an alternate route was open. Willhite later testified that, once appellants placed all obstacles in position, there was no way to leave appellees' property. In addition, the conversion of trucks existed even though appellees eventually regained dominion and control over their trucks once they removed the obstacles from the paths. Conversion is present with even a temporary denial of possession. Railroad Co. v. O'Donnell (1892), 49 Ohio St. 489, 497; Gillespie McCulley v. Holland (1914), 3 Ohio App. 116, 119.
We further recognize that the conversion of gravel continued because Geiger would re-block the pathways providing access to the gravel and would not allow any trucks to haul gravel from the property. By prohibiting appellees from hauling their gravel, appellants also exerted wrongful dominion and control over equipment possessed by appellees to load and unload gravel on the trucks. Accordingly, the jury's decision to find appellants liable for conversion is not against the manifest weight of the evidence. As such, we overrule appellants' ninth assignment of error.
Appellants' tenth and eleventh assignments of error relate to Geiger being held personally liable under the doctrine of piercing the corporate veil. Appellants first assert that the trial court provided an incorrect jury instruction on the doctrine of piercing the corporate veil. In particular, appellants claim that the trial court failed to inform the jury that the corporate veil may be pierced only if appellees introduced evidence that Geiger controlled and dominated Morrison Road Development Company with the intent to commit fraud. We disagree.
In American Hardware Supply v. Alan Supply, Inc. (1989),63 Ohio App.3d 838, 843, this court applied the piercing the corporate veil standard set forth in Bucyrus-Erie Co. v. Gen. Prod. Corp. (1981),643 F.2d 413, 418:
 * * * [T]he corporate fiction should be disregarded when: (1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. * * *
In Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc. (1993), 67 Ohio St.3d 274, the Ohio Supreme Court resolved a conflict among Ohio appellate court decisions and adopted the Bucyrus-Erie test as the law in Ohio. See Cent. Benefits Mut. Ins. Co. v. RIS Admrs. Agency, Inc. (1994), 93 Ohio App.3d 397, 404.
Since Belvedere, we have concluded that the second factor of the Bucyrus-Erie test is satisfied when the record establishes that a corporate shareholder, officer or manager caused a corporation to commit some unjust or inequitable act against the person seeking to pierce the corporate veil. See Cent. Benefits Mut. Ins. Co., at 404; Pritchett, Dlusky Saxe v. Pingue (Sept. 16, 1997), Franklin App. No. 96APE11-1598, unreported. Thus, contrary to appellants' assertions, a party is not required to establish fraud when seeking to pierce the corporate veil. As such, we conclude that the trial court did not err in omitting language on fraud in its jury instruction on piercing the corporate veil.
Appellants further assert that the piercing the corporate veil doctrine does not apply in this case because appellees' complaint and amended complaint contain no allegations specifying their intent to proceed under the doctrine. As such, appellants argue that Geiger was entitled to either a dismissal or directed verdict as to claims brought against him individually. We disagree.
Under the Ohio Rules of Civil Procedure, a complaint need only give the defendant fair notice of a desired claim and an opportunity to respond. Leichliter v. National City Bank of Columbus (1999), 134 Ohio App.3d 26,31. Thus, in Geier v. Natl. GG Industries, Inc. (Dec. 23, 1999), Lake County App. No. 98-L-172, unreported, the Lake County Court of Appeals refused to hold that a plaintiff's complaint was to relate a specific intention to proceed under the doctrine of piercing the corporate veil. Accordingly, the appellate court concluded that the trial court properly allowed the jury to decide a piercing the corporate veil issue where the plaintiff's complaint contained some indication that evidence on the issue would be introduced at trial. Id.
In this case, appellees' complaint and amended complaint contain sufficient information indicating their desire to proceed under the doctrine of piercing the corporate veil. Appellees name Geiger in his individual capacity and describe Geiger personally using his company to engage in the alleged conversion and breach of contract. As such, the trial court did not err in allowing the jury to decide whether to hold Geiger personally liable for appellees' damages under the doctrine of piercing the corporate veil.
Lastly, appellants assert that the jury's decision to pierce the corporate veil is against the manifest weight of the evidence. Again, we disagree. The jury's decision to pierce the corporate veil will not be reversed as being against the manifest weight of the evidence if the decision is supported by some competent, credible evidence. See C.E. Morris Co., syllabus.
Geiger can be held personally liable for appellees' claims if the record satisfies the elements of Bucyrus-Erie Co. Here, Geiger accepted checks made out to him personally, even though the checks were made for the purchase of land owned by Morrison Road Development Company. As well, many of these checks were not accounted for in the financial records of the corporation. Indeed, some of the funds were endorsed by Geiger for deposit into a bank account owned by his other corporation, Geiger Excavating Co., Inc. In addition, the record establishes that Geiger did not keep Morrison Road Development Company adequately funded. The record contains monthly account summaries of Morrison Road Development Company's money market account from October 23, 1993 through October 31, 1997. Except for one month, the account balances were below $100. Indeed, for several months, the account balances were negative. These practices by Geiger of underfunding Morrison Road Development Company and not respecting its corporate form establish that Geiger operated the corporation in such a way that it had no separate mind, will or existence of its own. See LeRoux's Billyle Supper Club v. Ma (1991),77 Ohio App.3d 417, 422-423; Bucyrus-Erie, at 418-419.
Furthermore, as noted in other sections of this opinion, the record establishes that such domination and control were used to commit the wrongful acts of conversion and breach of contract. As well, appellees provided testimony and documentary evidence establishing that they were injured from the wrongful acts.
Accordingly, we conclude that the record satisfies the three factors in Bucyrus-Erie to allow Geiger to be personally liable in this case under the doctrine of piercing the corporate veil. We emphasize that our decision is not based on the fact that Geiger is Morrison Road Development Company's sole shareholder, president, chairman of the board and director. We have previously recognized that the closely held nature of a corporation does not conclusively establish a basis for piercing the corporate veil. See Cent. Benefits Mut. Ins. Co., at 404. Rather, our decision is based on the manner in which Geiger controlled Morrison Road Development Company and the way he conducted the company's business. Therefore, the jury's decision to pierce the corporate veil is not against the manifest weight of the evidence. As such, based on the above, we overrule appellants' tenth and eleventh assignments of error.
In their twelfth assignment of error, appellants contend that the trial court erred in allowing the jury to consider appellees' breach of contract claim because the January 23, 1998 closing agreement was made without a "meeting of the minds." We disagree. As noted below, the January 23, 1998 closing agreement was made with the requisite "meeting of the minds." As such, we overrule appellants' twelfth assignment of error.
Appellants' thirteenth assignment of error concerns Dalicandro's testimony about the 1993 real estate purchase contract. The contract contains a clause stating:
 This contract accepted on December 8th 1993, by Valerio Dalicandro and Steve Geiger is extended until acceptance of street and utilities by the City of Columbus. The date of closing shall be as soon as possible after all City of Columbus specifications are met. * * *
At trial, over the objection of appellants' trial counsel, the following exchange took place between appellees' trial counsel and Dalicandro:
 Q. Now, sir, what was your understanding about when you were supposed to close on this property?
* * *
 A. We were to close on this property as soon as possible.
Appellants assert that the above interpretation constitutes inadmissible parole evidence. We disagree. Parole evidence is admissible to ascertain the parties' intentions behind ambiguous language in a contract. Shifrin v. Forest City Ent. Inc. (1992), 64 Ohio St.3d 635, syllabus. Here, the contract term "as soon as possible" is subject to different interpretations and, thus, is ambiguous. See Yoder v. Electric Co. (1974), 39 Ohio App.2d 113, 115-117. As such, the trial court properly permitted evidence on what the parties intended when they used the term "as soon as possible" in their contract.
Appellants' trial counsel elicited further testimony on when the parties were to close on the property:
Q. Was the road to be built before or after closing?
 A. The road — the road was to be built, again, as soon as possible. We could have built it before the closing. Could have built it after the closing.
Dalicandro's testimony that the road could have been built after the closing contradicts express language in the 1993 contract stating that the agreement is contingent on the road being built. Parole evidence may not contradict express language of the contract. See Ohio Historical Society v. General Maintenance Engineering Co. (1989),65 Ohio App.3d 139, 146. Thus, Dalicandro's latter testimony violates the parole evidence rule.
We recognize that the above testimony was elicited without objection; however, parties cannot waive objections to the admission of parole evidence. See Center Ridge Ganley, Inc. v. Stinn (1987),31 Ohio St.3d 310, 313, citing Florence v. Tri-State Savings Loan Co. (1974), 322 N.E.2d 322. Nonetheless, the existence of trial error does not necessarily require a reversal unless the error prejudiced appellants. See Civ.R. 61; Seley v. G.D. Searle Co. (1981),67 Ohio St.2d 192, 210. The above testimony relates to whether appellants' obligation to build the road was waived when appellees closed on the 4.5 acres without the road having been built. However, the record contains other documentary evidence establishing that appellants' obligation to construct the dedicated road was preserved through a series of agreements the parties entered into after the 1993 land purchase contract. Therefore, appellants were not prejudiced by the erroneously admitted parole evidence. Accordingly, we conclude that the trial court did not commit reversible error in admitting the above parole evidence. As such, we overrule appellants' thirteenth assignment of error.
Appellants' fourteenth assignment of error concerns their request for a jury instruction on novation. As noted below, the parties entered into a series of contracts from 1993 to 1998 setting forth appellants' obligation to construct a dedicated road. Appellants claim that, each time the parties entered into new agreements, the previous agreements were extinguished through novation. Therefore, according to appellants, the novation instruction was needed to prohibit the jury from awarding breach of contract damages on the pre-1998 agreements. Thus, appellants assert the trial court erred in not providing the requested novation instruction. We disagree.
"A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by the substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." McGlothin v. Huffman (1994),94 Ohio App.3d 240, 244. In order for a novation to occur, "there must be a clear and definite intent on the part of all parties to the original contract that the purpose of the second agreement is to effect a novation; to completely do away with the original contractual obligation." King Thompson, Holzer-Wollman, Inc. et al. v. Anderson (Jan. 20, 1994), Franklin App. No. 93APE08-1155, unreported. A novation can never be presumed. Id.
Here, the contracts made after the initial 1993 agreement do not contain any language extinguishing previous obligations to build the dedicated road. In addition, neither party in this case introduced evidence establishing a clear and definite intent to effect a novation. Thus, without any evidence to the contrary, we will not presume a novation by the mere fact that the parties entered into a series of agreements subsequent to the 1993 land purchase contract. As such, the trial court did not err in failing to provide a jury instruction on novation. Therefore, we overrule appellants' fourteenth assignment of error.
In their fifteenth assignment of error, appellants contend that it is against the manifest weight of the evidence for the jury to find appellants in breach of contract for failing to build the dedicated road. We disagree.
As noted above, appellants' obligation to build the dedicated road first arose out of the 1993 land purchase contract for the 4.5 acres. The language of the agreement states that the real estate contract is contingent upon appellants building the dedicated road; however, appellants contend that their obligation to build the road was waived when appellees closed on the 4.5 acres without the road having been built.
"`Waiver as applied to contracts is a voluntary relinquishment of a known right.'" Griffith v. Linton (1998), 130 Ohio App.3d 746, 751, quoting White Co. v. Canton Trans. Co. (1936), 131 Ohio St. 190, paragraph one of the syllabus. A party may waive the terms of a written contract by words or conduct; however, "[m]ere silence will not amount to waiver where one is not bound to speak." White Co., at 198.
Here, when the parties closed on the 4.5 acres of land, they entered into a closing agreement setting forth appellants' obligation to construct the dedicated road. Thus, appellants were put on notice that the road requirement continued to exist even though it had not been built at the time of closing. Accordingly, we conclude that appellees did not waive appellants' obligation to build the road when they closed on the 4.5 acres. Appellants further assert that they cannot be held in breach of contract because the latest 1998 closing agreement was made without a "meeting of the minds." Again, we disagree.
A "meeting of the minds" between parties is an essential element of a valid contract. Noroski v. Fallet (1982), 2 Ohio St.3d 77, 79. The "meeting of the minds" is normally manifested by an offer and acceptance. Nilavar v. Osborn (2000), 137 Ohio App.3d 469, 484. Thus, the signing of an agreement and acquiescence in its effect generally demonstrates the existence of a "meeting of the minds." See Cuyahoga Cty. Hospitals v. Price (1989), 64 Ohio App.3d 410, 416.
In this case, Geiger's conduct at the closing demonstrates that the 1998 closing agreement was made with the requisite "meeting of the minds." Appellees' attorney Ray King, and closing officer William Stevenson witnessed the 1998 closing, and testified that Geiger went through with the closing and signed the closing agreement. We acknowledge that, after the closing, Geiger asked Stevenson and King not to record the deed; however, this request does not refute the existence of a "meeting of the minds" with the 1998 closing agreement. According to the record, Geiger mostly complained about the deed and made no mention of his unwillingness to comply with the closing agreement obligating him to build the road. Moreover, the request, occurring after the closing, may merely demonstrate Geiger changing his mind about the deed rather than the lack of any "meeting of the minds" with agreements he signed at the closing.
Accordingly, based on the above, we overrule appellants' fifteenth assignment of error.
Appellants' sixteenth and seventeenth assignments of error concern their motions for new trial and for judgment notwithstanding the verdict, which were denied by the trial court. Appellants filed a motion for new trial claiming, in part, that the trial court erred in allowing the jury to consider parole evidence on the 1993 land purchase contract. A trial court has authority to grant a new trial when it finds that it committed an error of law during the trial. Sanders v. Mt. Sinai Hospital (1985), 21 Ohio App.3d 249, 252. However, a new trial will not be allowed where the challenged error is not prejudicial. Id.
We have previously concluded in this opinion that the trial court erroneously allowed the jury to consider some parole evidence. However, we also concluded that the erroneously admitted parole evidence did not prejudice appellants' trial. Thus, appellants are not entitled to a new trial on grounds the trial court improperly allowed parole evidence to be considered by the jury.
Appellants also claim that they are entitled to a new trial because the evidence does not support the jury's decision to pierce the corporate veil, to award appellees punitive damages and to find appellants liable for conversion. A motion for new trial may be granted when the judgment is not sustained by the weight of the evidence. Civ.R. 59(A)(6). However, as noted above, the record contains competent, credible evidence in favor of the above decisions. Therefore, appellants are not entitled to a new trial on the basis that the jury's decisions on these matters are against the manifest weight of the evidence.
Similarly, appellants filed a motion for judgment notwithstanding the verdict on the basis that the evidence does not support the jury's decision to pierce the corporate veil, award appellees punitive damages and find appellants liable for conversion. According to the Ohio Supreme Court:
 The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the abovemotions. * * * [Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275.]
For the reasons noted throughout this opinion, we conclude that the record contains sufficient evidence supporting the jury's decisions on the issues of piercing the corporate veil, punitive damages and conversion. Accordingly, appellants are not entitled to a judgment notwithstanding the verdict on the above claims.
In addition, appellants claim that they are entitled to a new trial because the trial court failed to consolidate this case with Geiger v. King. However, as noted below, the trial court did not abuse its discretion when it decided not to consolidate the cases. As such, appellants are not entitled to a new trial on the basis that the trial court did not consolidate the cases.
Furthermore, appellants claim that they are entitled to a new trial or a judgment notwithstanding the verdict on the breach of contract claim stemming from appellants' failure to build the dedicated road. Appellants reiterate their argument that appellees waived the obligation; however, we have already concluded in this opinion that appellees did not waive appellants' obligation to build the dedicated road. Thus, appellants' waiver claim provides no basis for a new trial or judgment notwithstanding the verdict.
Appellants also assert that appellees' trial counsel tainted the jury when he stated, during closing argument, "[Geiger] calls [Dalicandro] on the phone, and he calls him forgive me `a f___ing dago son of a bitch.'" However, this statement, which passed without objection from appellants, reiterates evidence introduced at trial and, as noted above, goes toward establishing appellees' claims for punitive damages. This reiteration of evidence does not go outside the wide latitude afforded counsel during closing argument. See Betz v. Timken Mercy Med. Ctr. (1994),96 Ohio App.3d 211, 217. Therefore, appellees' closing argument provides no basis for a new trial.
Lastly, appellants contend that the trial court erred in not granting remittitur on the compensatory and punitive damages awarded on appellees' conversion claim. We disagree. Through remittitur, a trial court has authority to correct an unjust award. Betz, at 218. However, as to remittitur on compensatory damages awards, "it has long been held that * * * a reviewing court is not at liberty to disturb the jury's assessment absent an affirmative finding of passion and prejudice or a finding that the award is manifestly excessive." Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 655.
Here, the record is devoid of any evidence that the jury's decision on compensatory damages for conversion was based on passion or prejudice. As well, we find nothing in the record indicating that the verdict is "manifestly excessive." In an action for conversion, a plaintiff is entitled to recover the full value of the property converted. Edna Norton Redbird Central, Inc. v. Pam Popper and Goldmark Securities (June 19, 1990), Franklin App. No. 89AP-906, unreported, citing Doolittle Chamberlain v. McCullough (1857), 7 Ohio St. 299, 308, and Keys v. Pittsburgh Wheeling Coal Co. (1898), 58 Ohio St. 246, 276-277. However, it is well-established that a party is not entitled to the entire value of converted property if the property has been retaken or returned. Pence v. Jordan (Nov. 20, 1981), Clark App. No. 1536, unreported, citing Rogers v. Standard Steel Castings Co. (1922),16 Ohio App. 474. In this case, the jury did not award appellees' full value of their converted property; rather, the jury's verdict exhibits a fair and reasonable consideration of appellees' experiencing seven days of conversion on property necessary to their business. Thus, we will not disturb the trial court's decision to deny remittitur on the compensatory damages award for conversion.
As to appellants' motion for remittitur on the punitive damages, we initially note that the jury may award punitive damages to punish "the guilty party for the wicked, corrupt, and malignant motive and design, which prompted him [or her] to the wrongful act." Villella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 37, modified on other grounds in Moskovitz, at paragraph two of the syllabus. The amount of punitive damages to be awarded rests largely within the determination of the trier of fact. Villella, at 40. Here, as noted above, the jury was properly given the opportunity to award punitive damages on the conversion claim and we find nothing in the record compelling us to interfere with their final determination on such damages. Accordingly, based on the above, we overrule appellants' sixteenth and seventeenth assignments of error.
In their eighteenth assignment of error, appellants contend that the trial court erred in denying their motion to consolidate this case with Geiger v. King. We disagree.
Civ.R. 42(A) governs the consolidation of trials and states:
 When actions involving a common question of law or fact are pending before a court, that court after a hearing may order a joint hearing or trial of any or all the matters in issue in the actions; it may order some or all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
Here, appellants contend that the trial court should have consolidated this case with King because both cases concern the January 23, 1998 closing for the 3.308 acre parcel; however, a trial court's decision on whether to consolidate cases is subject to an abuse of discretion. BancOhio Natl. Bank v. Schiesswohl (1988), 51 Ohio App.3d 130, 132. An abuse of discretion constitutes more than an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, it entails an action of the trial court that is unreasonable, arbitrary or unconscionable. Id.
In this case, the trial court recognized that, when appellants requested consolidation, the parties in King were in the initial stages of discovery, whereas the Dalicandro case was soon scheduled for trial. The trial court noted that such different time tracks would require the Dalicandro case to be delayed if consolidated with King. According to the trial court, such delay would prejudice appellees because the issues in their case were "of a more time sensitive nature." The trial court's rationale presents valid concerns for not consolidating this case with King. As such, we conclude that the trial court did not abuse its discretion in denying appellants' motion to consolidate. Therefore, we overrule appellants' eighteenth assignment of error.
Appellants' first assignment of error concerns the trial court's specific performance order directing appellants to construct a road with sewers and a culvert over .969 acres bordering appellees' property. As noted above, the trial court eventually ordered the road to be completed by December 13, 1999. Because the road had not been constructed by the trial court's deadline, the trial court held appellants in contempt and ordered Geiger to serve ten days in jail. Appellants assert that the trial court erred in finding them in contempt. We agree.
At the contempt hearing, appellants sought to be excused from the trial court's specific performance order because the city of Columbus would not grant the road permit unless it was built across appellees' 4.5 and 3.308 acres of land. Thus, appellants assert that they are unable to obtain the road permit unless they convey additional land to the city extending beyond the .969 acres subject to the parties' agreements. Therefore, according to appellants, complying with the trial court's order would force them to endure additional expenses and loss of land not bargained for in their agreement with appellees.
It is well-established that specific performance will not be granted where it will cause unreasonable hardship, loss or injustice to the party in breach. Sternberg v. Board of Trustees of Kent State University (1974), 37 Ohio St.2d 115, 118, citing Huntington v. Rogers (1859),9 Ohio St. 512; Restatement of the Law 2d, Contracts (1979) 184, Section 364(1). As noted by the Ohio Supreme Court, "it makes no difference whether the circumstances which render the claim for specific performance, when made, inequitable, arose prior or subsequent to the date of the contract sought to be enforced." Huntington, at 516.
Therefore, appellants were entitled to address whether they should be excused from the trial court's order. However, the trial court would not allow appellants to pursue this defense.
In rejecting appellants' excuse defense, the trial court concluded that appellants could have "posted a bond and then the issue over who should pay for the additional section of the roadway could have been addressed." However, the trial court placed improper emphasis on appellants' failure to post a bond. By providing a contempt hearing, the trial court put appellants on notice that they would have the opportunity to pursue any excuses or defenses for not complying with the trial court's order. Thus, appellants could reasonably conclude that they would be able to pursue their excuse without posting any bond.
Moreover, by suggesting that a bond be posted so the parties could address who would be monetarily responsible for additional expenses and land transfers, the trial court is increasingly interjecting itself in this contract dispute and subjecting itself to the possibility that it will be supervising the ongoing performance of the contract. We have previously recognized that a court lacks authority to supervise the ongoing performance of a contract. Goldfarb v. The Robb Report, Inc. (1995), 101 Ohio App.3d 134, 146. As a result, we have concluded that specific performance is not the preferred remedy for breaches of service contracts. Id. Therefore, we conclude that the trial court erred in holding appellants in contempt for failing to build the road and utilities. As such, appellants' first assignment of error is sustained, remanding this case to the trial court for another hearing to determine whether appellants are excused from the order to build the road. If the court concludes that appellants are excused from the order, it should then determine the proper substitute remedy.
Because of our disposition on appellants' first assignment of error, appellants' second, third and fourth assignments of error are rendered moot. App.R. 12(A)(1)(c).
In summary, appellants' fifth through eighteen assignments of error are overruled, appellants' second, third and fourth assignments of error are rendered moot, and appellant's first assignment of error is sustained. The judgment of the trial court is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.
 ___________________ KENNEDY, J.
BRYANT, P.J., and BROWN, J., concur.